Bruere *v.* Cook.

JOSEPH H. BRUERE, executor, &c.,

*v.*

CHARLES COOK et al.

[Filed July 14th, 1902.]

A testator by residuary bequest gave the residue of his estate "to the Board of Missions of the Baptist Church of New Jersey, one-third for the home and two-thirds for foreign missions." There is no board of missions of the Baptist Church of New Jersey, nor any body, corporation or society having any similar name. Nor is there any body, corporation or society under the control of the members of the Baptist Church of New Jersey which undertakes or has the equipment to carry on either home missions or foreign missions. There are, under the control of members of Baptist churches, three entirely distinct lines of mission work: (1) the aiding and extension of Baptist churches within the State of New Jersey; (2) mission work within the area of the United States and territories and Mexico, which, at the time the testator's will spoke, had been known for years in the Baptist Church as "Home Missions;" (3) mission work in foreign countries outside of the United States and its territories and Mexico which had been known in that church as "Foreign Missions." Mission work in each of these fields has been separately and coincidently carried on by Baptist churches.—*Held,* (1) the bequest is a valid gift of the residue, one-third part to home missions of the Baptist Church and two-thirds parts to the foreign missions of that church, as above defined; (2) the gift is in the nature of a trust, which this court will aid and enforce; (3) the legatee or trustee named by the testator to receive the gift and apply it to home and foreign missions is non-existent, but this will not be permitted to defeat the gift. This court will appoint competent trustees to receive and apply it according to the testator's declared purpose; (4) an executor of a will containing such a residuary bequest may apply for the appointment of such trustees in order that he may perform his duty and pay out the legacy.

On bill, answer and proofs.

This bill is filed by the complainant, Bruere, as the executor of the will of Evan E. Cook, who died June, 1899, testate. His will is dated the 8th day of August, 1892. It contains sundry preliminary gifts, and a final residuary bequest and devise in these words:

"*Thirdly.* I empower my executor to sell, at his discretion, with the consent of my said wife, any or all of my real estate of whatsoever character or wheresoever situated, at either public or private sale, and that the proceeds shall be invested as well as the residue of my personal property in good interest-bearing securities, and the income thereof to be paid to my wife during her life, and after her decease to pay five hundred dollars to my cousin William Henry Cook, and the balance or residue of my estate, both real and personal, of whatsoever kind and wheresoever situate, to the Board of Missions of the Baptist Church of New Jersey, one-third for the home and two-thirds for foreign missions. Lastly," &c.

The complainant proved the will in 1899, and entered upon the execution of it. Mrs. Cook has since died, and the complainant has substantially concluded the duties of his office, except the payment of this final residuary gift. A portion of real estate remains unsold, and the complainant has in hand a balance of $19,638.65 of cash, of which $500 is payable to William Henry Cook. The remainder—$19,138.65—he has as yet retained, because of conflicting demands made by different corporate bodies, each claiming to be the final legatee intended by the testator to have this residuary gift, and the further contention, by the next of kin, that this final gift is a nullity and void, and that the testator, as to the fund in hand, died intestate.

The complainant shows that the decedent testator had for years been a member of the Baptist Church, and that he died in that faith. The functions of the various societies of that church, who are made defendants, are described, and the complainant alleges that, in view of the uncertainty of the language of the bequest, and of the conflicting claims for the fund, he fears to pay the money to anyone, until it is determined, by some competent court, whether the residuary bequest is void, and if not, to whom the fund in hand should be paid. He brings in as defendants the next of kin and heirs-at-law of the decedent and all the various corporate bodies in the Baptist Church who claim, or could claim, any right to receive the bequest, and asks the direction of this court as to his duty in the premises.

The next of kin and heirs answer, admitting the will, its probate, the administration of the estate, and the resulting fund now in hand, but contending that the residuary bequest is

40

void, because, as they allege, of uncertainty in the designation of a legatee. They say there is no such body as the named legatee, "The Board of Missions of the Baptist Church of New Jersey." They admit that there is a corporate body known as "The New Jersey Baptist Convention," but they insist it is not engaged in home or foreign missionary work, and that it was not intended by the testator to be the recipient of the residuary gift. They make the same contention as to "The New Jersey Baptist Education Society." They also aver that "The American Baptist Missionary Union" and "The American Baptist Home Mission Society" (other corporate bodies of the Baptist Church who have been made defendants as possible ·claimants) are not within the testator's description of his intended legatee.

"The New Jersey Baptist Convention," a corporation of this state, by its answer, claims the legacy, on the ground that it is the only corporation in New Jersey having any authority or supervision of missionary work on behalf of the Baptist churches of New Jersey for the whole of that state.

"The American Baptist Missionary Union," a corporation organized to administer foreign missionary work of that church, by its answer, admits the claim of "The New Jersey Baptist Convention."

"The American Baptist Home Mission Society," a corporation organized to conduct home mission work of that church, by its answer, claims that "The New Jersey Baptist Convention" was intended to have the residuary legacy, but that the gift is in trust, the one-third part for home missions for the use by itself, "The American Baptist Home Mission Society," and, by its cross-bill, prays that one-third of the residuary fund may be decreed to be delivered to "The New Jersey Baptist Convention," to be paid to "The American Baptist Home Mission Society" for home missions.

Issue was joined on these answers and the cross-bill. Afterwards, by agreement of parties, the answer and cross-bill of "The American Baptist Home Mission Society" was withdrawn, and a decree *pro confesso* was taken against it. The cause was brought to a hearing, the active litigants being the, next of kin and heirs-at-law of the testator, who claim that the residuary

bequest is a nullity, and "The New Jersey Baptist Convention," which insists that the legacy is valid, and that it is the intended legatee.

*Mr. William M. Lanning,* for the complainant.

*Mr. Edward Ambler Armstrong* and *Mr. Samuel W. Beldon,* for "The New Jersey Baptist Convention" and "The American Baptist Missionary Union."

*Mr. Linton Satterthwait,* for the next of kin and heirs-at-law of the testator, Evan E. Cook.

GREY, V. C. (orally).

This case must be determined almost wholly upon the words of the will and the testimony which is offered to show the identity of the legatee intended by the testator to take the residuary bequests. Extended examination of authorities is not necessary, for each matter like this must be determined by the incidents peculiar to the case which may be under consideration. I will therefore dispose of it at once. So far as the principles of the law applicable to this case need to be referred to, they may be found in *Mills* v. *Davison, 9 Dick. Ch. Rep. 659,* where a gift of a lot of land, to be used for purposes of worship and teaching in accordance with the rites of the Protestant Episcopal Church, was held to be a gift for a charitable use, in the nature of a trust, which equity will enforce. If this court will aid and enforce, as charitable, a gift to maintain a single church building, how much more beneficient is a gift for the further extension of the influence of the Christian religion among the whole human race in this and foreign countries? In *Hesketh* v. *Murphy, 9 Stew. Eq. 307, 308,* are collected and discussed the cases of gifts to misnamed donees, or for purposes requiring selection of the final beneficiaries within a subclass. There it is held that gifts to misnamed first legatees, for distribution to a subclass of beneficiaries, will be aided and enforced in this court. These decisions are both in the court of appeals, and they settle the law applicable to this case.

An examination of the terms in which this residuary bequest is expressed, and a very slight consideration of the contentions of the parties, show that the complainant is fully justified, for his protection in the administration of his trust, in asking the aid of this court in determining the validity of the bequest and the identity of the legatee.

The residuary gift, if forceful, passes, not only the fund of money remaining in the hands of the complainant, as executor of the will, but also the real estate whereof the testator died seized which yet remains unsold. It is both a legacy and a devise. No title was devised to the executor. He received, as to the real estate, only a power of sale. The executor has control only of the personalty, the fund in his hands, but the terms of the will are such that the residue of the personalty and of the real estate pass by the same gift to the same beneficiary. In this cause the only thing to be considered is the duty of the executor with relation to the fund in his hands. The first question arises on the claim of the heirs and next of kin, that the whole residuary gift fails, and that the testator, as to that gift, died intestate, and consequently that his real estate descended to his heirs-at-law, and the residue of his personalty to his next of kin.

They challenge this bequest because they insist that it is so uncertain in its nomination of the residuary legatee and devisee, and in its designation of the ultimate use of the fund, that no court can enforce it, and consequently cannot instruct the complainant to pay the money to anybody.

It is undisputed that there is no such body or corporation as "The Board of Missions of the Baptist Church of New Jersey," the primary legatee named in the will.

The words of the gift show that the testator intended to give the property in question to some board or association of persons of the Baptist Church of New Jersey which was engaged in the conduct of home and foreign mission work. In making this gift he indicates, in the clearest possible way, that he did not intend that the board which might be the recipient of the title should use the fund for any general purposes of church work. He meant to give the title of the gift to a board, but this board

should use and apply the gift, one-third part thereof for home missions and two-thirds parts thereof for foreign missions of the Baptist Church.

. The title was intended to be given to one, for the use and benefit of further specified beneficiaries or objects. In short, without so naming it in words, he created a trust.

It must, of course, appear that in 1899, when the testator died and his will spoke, the objects which he intended should ultimately receive the benefits of his bounty were sufficiently defined by him to enable the fund to be devoted to those objects.

·The misnomer of the legatee who should, in the first place, receive and apply the fund, or the selection of one who does not have the power or equipment to carry the testator's intention into effect, or even the entire omission in anyway to indicate a person or corporation to whom payment of the fund could primarily be made, will not defeat such a gift, if the testator's ultimate object is lawful and is definitely indicated. Equity will not permit a lawful trust to be defeated for want of. an efficient trustee.

On this question of the definiteness of the object for which the testator gave this residue a considerable amount of testimony was offered by a number of Baptist ministers, showing how the mission work of that church is organized and conducted. Their statements all agree in a very clear and frank exposition of the constitution of that church, its method of government, and the various organizations through which it carries on its mission work.

All the church congregations have the same faith. Each is, in its government, independent. From the pastors and members various societies have been formed to carry on the different branches of church work. In 1899, and indeed for many years before that time, there existed a distinct and well-defined branch of endeavor, known among Baptists as "home missions." This included in its area of church work the whole of the United States and its territories. Another branch, equally well known and established, was called "foreign missions." This included all foreign parts outside of the United States. The support of these different branches of church work had for years been the

subject of exhortation in the various Baptist churches and of contribution by the members. The funds raised were expended in these two separate and distinct fields. These lines of work had been so thoroughly established in the Baptist Church, at and before the time of the testator's death, that the words "home missions" and "foreign missions" had such a well-understood significance that they entered into the general nomenclature of the church, and were commonly used to indicate the fields of church work above defined. Irrespective of their acceptance among Baptists, home missions and foreign missions are understood, in common parlance, in all churches, to have substantially the same meaning.

The testator had, for years before his death, been a member of a Baptist church in Trenton. A gift by him to Baptist Church home missions and to Baptist Church foreign missions sufficiently indicates the ultimate beneficiary for whom he intended the gift. This final purpose of the testator is plainly expressed in the very words of the will, and when the proofs show that there is a well-defined work in home missions and in foreign missions in the Baptist Church, there is no element of uncertainty in the gift.

The next of kin further insist that the terms of the bequest require the exercise of the receiver of the fund of special discretionary powers as to the detailed expenditure of the several portions of the fund, the places where, and for whom, and in what amounts; that the testator made the gift itself dependent upon the exercise of these discretionary powers by the trustee whom he undertook to select; that he failed to indicate any trustee who can be identified, and that this failure defeats the whole gift.

The will expresses no indication that the testator reposed any special confidence that the named primary legatee should exercise a discretion in expending the funds given. The general object of its consideration—"home missions" and "foreign missions" of the Baptist Church—were well-known fields of endeavor, constantly calling for, receiving and expending large contributions. There was no reason why he should rely upon any particular qualification of the named primary legatee, and

there is neither expression in the will, nor proof *aliunde* (if such could be considered), that the testator did so rely upon any special qualifications in the named trustee. In actual fact, there never was any such body as the legatee named by the testator.

The plain, self-evident fact is that the testator, while clearly expressing his intent as to the ultimate destination of his gift, has, by mistake, failed to indicate the person or corporation who, as primary legatee, should receive and deliver it at that ultimate destination.

I cannot see that there is any serious difficulty in construing this residuary bequest to be sufficiently definite to show that the testator intended it to go, two-thirds for the benefit of the foreign missions and one-third for the benefit of the home missions of the Baptist Church. This expression of his intent is not defeated by uncertainty in the selection and identification of the trustee who might receive and apply the gift to those purposes.

The other defendants, "The New Jersey Baptist Education Society," "The American Baptist Missionary Union" and "The American Baptist Home Mission Society," are too variant in name from the descriptive words used by the testator to have been intended by him to take the legacy.

A more difficult question arises on the contention made by counsel for the defendant "The New Jersey Baptist Convention." All the other defendants, representing the various corporate bodies which carry on mission work for the Baptist Church, have, by their pleadings filed in the case, indicated their willingness that "The New Jersey Baptist Convention" shall be deemed to be the body meant by the testator to be the primary legatee of this gift. The words of the will must, however, control this matter. If they are insufficient in their identification of the legatee who should take and apply the fund, it must be so declared. A trustee, in a proper case, may be appointed on application for that purpose.

The words used in the will descriptive of the primary legatee are "The Board of Missions of the Baptist Church of New Jersey." When the will was made, in 1892, the name of the state society was "The New Jersey Baptist State Convention." It

was changed, in 1894, to "The New Jersey Baptist Convention." The variance between the descriptive name used in the will and either name of this New Jersey society is so great that the latter cannot be held to be within the description of the legatee as given in the will.

The powers and scope of church work of this state society still further remove it from the possibility of its being the primary legatee intended by the testator.

The original incorporation of this society was by an act of the legislature of this state, passed February 3d, 1841. *P. L. of 1841 p. 19.* It enacts

"That the association known as the New Jersey Baptist State Convention for missionary purposes, shall be and is hereby constituted a body politic and corporate, by the name and title of The New Jersey Baptist State Convention."

There is a mention of the officers of the society and of the mode of conducting business. The only reference to the powers granted is contained in the third section, where it is provided

"that the said corporation shall not use its funds for any other than missionary and educational purposes, and the support of widows and children of deceased ministers."

The society appears to have conducted its business from 1841 until 1899, more than fifty years, in such a manner as definitely to interpret and fix the extent of its powers. Four or five of its ministers were on the stand as witnesses in this cause. Every one admitted that the society had always devoted all its machinery, all its endeavors, and all its expenditure of money, so far as it had expended money under its own auspices, to the furtherance of church work within the State of New Jersey. All of them admitted the fact that, coincidently with the action and labor of "The New Jersey Baptist Convention" within the State of New Jersey, there was being carried on a well-defined line of endeavor, by Baptist Church members, known by the name of "home missions," clearly distinguishable from the mission and church work that was undertaken by "The New Jersey Baptist Convention." There was, at the same time, another

clearly-defined line of endeavor and work, known as "foreign missions," which was equally distinguishable from the work of "The New Jersey Baptist Convention." The state society has never, at any time, undertaken to conduct either the work known in the Baptist Church as "home missions" or that known as "foreign missions." There were three several and distinctly separate lines of work, all proceeding at the same time, each in its own department, neither interfering with the others. "The New Jersey Baptist Convention" never had any such organization or equipment as would be necessary to carry on missions throughout the United States or in foreign countries. Its work and preparation for that work were strictly limited to the advancement and protection of Baptist churches and missions within the State of New Jersey. When the testator made his bequest he intended the fund to be used, not for the Baptist missions within the State of New Jersey, but for what were then and at the time of his death well known as "home missions"—that is, Baptist missions throughout the United States and territories, and "foreign missions"—that is, Baptist missions in foreign countries.

It is quite clear that nothing in the organization of "The New Jersey Baptist Convention," or in its mode of doing business, enabled it to carry into effect the purposes and objects of the testator, even if it had been actually named in the will as the first recipient of the residuary gift for the ultimate purposes he wished to accomplish.

The true interpretation of the intent of this will is that the testator clearly expressed the final purpose he had in view, and believed he had indicated a primary legatee to carry his final purpose into effect. His nomination of the primary legatee or trustee is a failure, because he has not, in the will, sufficiently identified the party intended. It is, however, such a trust that as this court will aid by the appointment of a trustee to execute the testator's purpose. This course may be taken when there is no such person or body as the one named by the testator, or when he selects a person or corporation which is unable to carry into effect the trust he creates. In either case the result is the same.

The ultimate bequest is indicated with sufficient certainty on the face of this will, but the selection of a person who shall carry into effect is a failure.

The complainant should be advised that the residuary gift is a valid bequest in favor of the home missions of the Baptist Church to the extent of one-third part thereof, and in favor of the foreign missions of the Baptist Church to the extent of the remaining two-thirds parts, and that no efficient trustee is indicated by the testator's will to whom the complainant can presently pay the funds in his hands, and that it is his duty to apply to some competent court for the appointment of trustee to receive this legacy and execute the trust.

I will advise a decree so declaring the effect of this will.

Under the rule laid down, in *Attorney-General* v. *Moore, Executor, 4 C. E. Gr. 519,* by the court of appeals, the complainant is entitled to be allowed a fee and his costs of this suit. The answering defendants are entitled to costs. Those who have appeared as active litigants may also be allowed a fee.