# Staunton.

PATTIE G. FITZGERALD, DAVID S. DOGGETT AND ANNIE D. LINEN v. LOULIE B. DOGGETT'S EXECUTOR, ETC.

September 12, 1930.

Absent, Prentis, C. J., and Epes, J.

*Wyndham R. Meredith, McGuire, Riely & Eggleston* and *Aubrey R. Bowles, Jr.,* for the appellants.

*Leake & Buford, E. M. Long* and *Thomas L. Preston*, for the appellee.

HUDGINS, J., delivered the opinion of the court.

Loulie B. Doggett named as sole executor of her last will, probated on April 11, 1927, in the Chancery Court of the city of Richmond, the Virginia Trust Company of Richmond, Virginia. Upon entering on its duties the executor found that the testatrix had endeavored to dispose of the residuum of her estate, valued at $65,000 and consisting of both realty and personalty, by the third article of her will, as follows:

"Third: All the rest, residue and remainder of my property, both real and personal, of which I may die seized and possessed, and to which I may be entitled at the time of my decease, and wheresoever situated, I do give, bequeath and devise unto that society or organization of the Virginia Conference, Methodist Episcopal Church, South, having as its principal object the relief of superannuated ministers, of the Virginia Conference.

"And it is my wish that the said society will distribute this fund to and among the most needy ones under its charge.

"I establish this trust fund as a memorial to my father, Bishop David S. Doggett, and it would please me if the church authorities would designate this fund as the 'Doggett Fund for Superannuated Ministers.' And I direct that the said society shall always keep said fund safely invested, and only the income from same to be used for the sole purpose for which it was created."

The bulk of the estate of the testatrix was devised and bequeathed for the purpose stated in the paragraphs quoted above. There were other small pecuniary gifts totalling some $3,700, of which the appellants, a sister, nephew and niece, were given $2,200.

The executor sought information to ascertain the residuary legatee intended by the testatrix in the third article of her will and claim was made for the residuum of the estate by two bodies, one the Conference Board of Finance of the Virginia Conference of the Methodist Episcopal Church, South, an unincorporated board, or committee, of the Virginia Conference, the other, The Society for the Relief of the Preachers of the Virginia Conference of the Methodist Episcopal Church, South, and their families, their widows and orphans, a Virginia corporation. These claims and their relative merits were presented, respectively, by the chairman of the Conference Board of Finance, Dr. B. N. Beckham, and by the secretary of the Preachers' Relief Society, Dr. J. T. Whitley, both in letters and by personal conferences. These two bodies decided that it would be advisable that one should retire in favor of the other, and the Preacher's Relief Society, by its board of directors, passed a resolution stating that it was the sense of the directors that the Conference Board of Finance of the Virginia Annual Conference was the proper organization to receive the residue of the estate bequeathed under the will of Loulie B. Doggett, and filed an answer stating that its directors had passed such a resolution.

The executor, unwilling to assume the responsibility of transferring to either of these bodies the estate mentioned, filed its bill in the Chancery Court of the city of Richmond, praying for a construction of the will and a determination whether either of the above-named organizations was entitled to the bequest. The heirs at law were made parties. Both organizations and some of the heirs filed answers and the case was duly heard by the learned judge of that court, who entered a decree holding, in effect:

"(1) That the Conference Board of Finance is the organization referred to by the testatrix in the third article of her will.

"(2)   That the bequest to the Conference Board of Finance is a valid bequest under section 587 of the Code of 1919.

"(3)   That the disposition made by the testatrix of her residuary estate is not a religious charity."

From this decree the heirs at law appealed.   The Preachers' Relief Society took no active part in the case and have not appealed from the lower court's decision.   The controversy here is between the heirs of the testatrix and the members of the Conference Board of Finance.

In order to understand the duties and organization of the Conference Board of Finance it will be necessary to refer to that part of the evidence showing the organization of the Methodist Episcopal Church, South.   This body is composed of the membership of that denomination commonly known as Methodist and functioning over a large area and in many States.   Its membership, both lay and clerical, are governed by and subject to an elaborate structure or code of church law designated and called the "Discipline."   The General Conference of the Methodist Episcopal Church, South, meets regularly once in every four years and is composed of delegates, clerical and lay, from each of its subdivisions called Annual Conferences.   An Annual Conference is composed of preachers and laymen who work and reside in a specified territory.   The Virginia Conference is an Annual Conference and its territorial area includes parts of Virginia, Delaware, Maryland and North Carolina.   This Conference meets annually and is composed of representatives, or delegates, from 835 congregations embraced within its territorial limits.   The Annual Conference, in turn, is subdivided into District Conferences. Each Annual Conference is required to organize a Conference Board of Finance, composed of one lay member from each district and an equal number of clerical members, the duties of which are to estimate the amount that will prob-

ably be necessary to provide a reasonable support for the superannuated preachers and the widows and orphans of deceased members, and recommend this amount for assessment upon the Conference, and to distribute the moneys received on assessment, or otherwise, to the superannuated preachers and their families. A superannuated minister is defined in the Discipline of the Methodist Church as "one who is worn out in the itinerant service."

If the testatrix had designated Preachers' Relief Society, a Virginia corporation chartered by an act of the General Assembly in 1894, as trustee to execute the residuary devise in her will, there is no question about the fact that the gift would have been upheld, as the charter of this corporation expressly authorizes it to receive, hold, invest and distribute funds in their discretion to all needy preachers and their families, widows and orphans of the Virginia Conference of the Methodist Episcopal Church, South.

The learned chancellor in the court below held, and the witnesses stated, that the description in the will does not point to the Preachers' Relief Society, but it does fit the Conference Board of Finance. The appellants maintain that the description in the will of the testatrix is as applicable to the one as to the other and that neither is described with that definiteness and certainty which the law requires. The Conference Board of Finance is an unincorporated body, the members of which are resident and non-resident of Virginia, whose personnel is changing from time to time and whose very existence depends not upon its own will but upon the will of the representatives of 835 other unincorporated bodies.

It is admitted that prior to the amendment of 1914 (Acts 1914, chapter 234) and the adoption of section 587 of the Code of 1919 the trust would have been invalid in this State. This court, therefore, must determine the effect of the following words in section 587: *"Every gift, grant, devise or*

*bequest hereafter made for charitable purposes,* whether made in *any* case to a body corporate or unincorporated, or to a natural person, shall be as valid as if made to or for the benefit of a certain natural person." The words in italics show the amendment.

A brief history of this legislation and of the decided cases is important as bearing on its proper construction. In Virginia the doctrine of charitable trusts or uses has had a somewhat checkered course. In the early Virginia cases the doctrine seems to have been recognized. In the case of *Charles* v. *Hunnicutt,* 5 Call. (9 Va.) 311, decided in October, 1804, reported in 1833, the testator devised six negro slaves to be manumitted, and authorized the monthly meeting of Quakers to execute a deed of manumission. The will was dated April 14, 1781. At the time the will was probated the statute authorizing manumission had not been enacted. In May, 1782, such an act was passed, but the monthly meeting had appointed trustees to execute a deed of manumission prior to the passage of the act. A son of the testator continued to hold the slaves, notwithstanding the deed and the act authorizing manumission. The negroes instituted a suit to obtain their freedom. Each of the five judges rendered an opinion supporting the devise, stating that devises in favor of charities should be liberally construed and the fact that the trustee was a voluntary association was no objection.

In the case of *The President and Professors of William and Mary College* v. *Hodgson,* 6 Munf. (20 Va.) 163, decided in 1818, the testator devised "to the President, Masters and Professors of William and Mary College, their successors in office forever, 500 Winchester bushels of Indian corn for the use and benefit of a free school to be established in the center of James City county   *   *   *   1,000 acres of the Hot Water tract of land is, by my desire, to stand pledged forever for the full and complete execution of this

devise." It was held that the devise for the benefit of the free school was not a charge upon the testator's estate generally, but only upon the Hot Water tract of land, and that it was valid. See *Overseers of the Poor* v. *Tayloe's Adm'r*, Gilmer (21 Va.) 336.

The conclusions reached in these decisions were: (1) That a devise to an unincorporated body, such as a monthly meeting of Quakers, is not invalid because of uncertainty of the trustees. (2) That if the trustees are designated by official title, such as the president of a college or the ministry and vestry of a parish, and the beneficiaries are indefinite and to be selected by the trustees, such as the poorest in the parish, such devises were good. The court stated that if no trustee had been named in the instrument equity would have appointed a trustee and compelled performance of the trust.

These cases were not cited and a contrary conclusion was reached in the familiar case of *Gallego's Exors.* v. *Attorney General* (1832), 3 Leigh (30 Va.), 450, 24 Am. Dec. 650, wherein this court, following the opinion of Chief Justice John Marshall in the case of *Philadelphia Baptist Association* v. *Hart*, 4 Wheat. 1, 4 L. Ed. 499, stated that the English doctrine of charitable uses had its origin in the statute known as 43 Eliz.; that inasmuch as this statute had been repealed in Virginia by the act of 1792, equity had no power to enforce a bequest to an unincorporated association as trustee; that there was no grantee capable of taking under the will; that the power of selection could never be exercised, and therefore a *cestui que* trust could not be brought into being. In the *Gallego Case* the devise was (1) $2,000 to be distributed among the needy poor and respectable widows; (2) $4,000 to the support of a Roman Catholic chapel and a lot devised to four named trustees for the purpose of building a church. It was held that the bequest and devise were void for uncertainty as to the

beneficiaries. See *Janey's Exor.* v. *Latane*, 4 Leigh (3 Va.) 327.

In the case of *Literary Fund* v. *Dawson* (1839), 10 Leigh (37 Va.) 147, the testator devised certain property to be used in the erection and maintenance of three schools, and in the event that the gift to the schools should fail, the same property was authorized to be paid to the Literary Fund, to be held by it for use in the counties of Albemarle and Nelson. At that time the Literary Fund was a corporation, but it was not authorized by its charter to receive this fund. It was held that the gift for the establishment of the schools was void for uncertainty; that the alternate gift was an executory devise and that if the executors could obtain an act of the legislature empowering the Literary Fund to receive the gift it would be valid. The act was so passed and the property was accepted by the Literary Fund. The original holding of the court was adhered to in a later decision, *Literary Fund* v. *Dawson*, 1 Rob. (40 Va.) 402.

In the year 1839 the General Assembly passed an act validating gifts to unincorporated schools, colleges and seminaries, provided that the General Assembly was officially informed after such will was recorded, and within two sessions thereafter it should incorporate such educational institutions, but expressly providing that the act should not apply to theological seminaries.

In 1841 the General Assembly passed another act whereby it carried out the suggestion of the court in the case of the *Literary Fund* v. *Dawson*. (1) by enlarging the corporate powers of the Literary Fund to receive the Dawson gift, and (2) by making valid any gift for the use of, or directly to, the Literary Fund, a county, or a municipality for literary or educational purposes. These two acts were codified by the revisors of 1849 as chapter 80 of that Code. The provision requiring a report to be made to the General

Assembly of any gift by will to an unincorporated school or college and the subsequent incorporation of such a body was eliminated.

By these provisions of the General Assembly the doctrine of charitable trusts as declared in the case of *Gallego* v. *Attorney General, supra,* was changed in so far as it applied to literary and educational purposes.

The Code revisors of 1849 did not contemplate that an unincorporated body should act as a trustee, for in their report to the legislature they provided that when the instrument creating the trust named either the board of the Literary Fund, a corporation, a county, or a natural person, and either failed to act, or when the gift was made to an unincorporated body as trustee, that then the court should appoint a trustee to administer the trust; but the legislature in adopting this section eliminated all reference to an unincorporated body.

Section 5 of this chapter provided that when no trustee had been appointed by the donor, grantor or testator, or if any trustee so appointed should refuse to act, then the (appropriate) court should appoint one or more trustees to carry the same into execution.

The decisions in the following Virginia cases were controlled either by the ruling in the case of *Gallego* v. *Attorney General* or by the statute. *Janey* v. *Latane* (1833), 31 Va. (4 Leigh) 327; *Hill's Executors* v. *Bowman* (1836), 34 Va. (7 Leigh) 650; *Literary Fund* v. *Dawson* (1839), 37 Va. (10 Leigh) 147; *Literary Fund* v. *Dawson* (1842), 40 Va. (1 Rob.) 402; *Brooke* v. *Shacklett* (1856), 54 Va. (13 Gratt.) 301; *Seaburn's Executors* v. *Seaburn* (1859), 56 Va. (15 Gratt) 423; *Kelly* v. *Love's Admr.* (1870), 61 Va. (20 Gratt.) 124; *Commonwealth of Virginia* v. *Levy* (1873), 64 Va. (23 Gratt.) 21; *Kinnaird* v. *Miller's Executor* (1874), 66 Va. (25 Gratt.) 107; *Roy's Executors* v. *Rowzie* (1874), 66 Va. (25 Gratt.) 599; *Hoskinson* v. *Pusey* (1879), 73

Va. (32 Gratt.) 428; *Missionary Society* v. *Calvert's Administrator* (1879), 73 Va. (32 Gratt.) 357; *Cozart* v. *Manderville's Executor* (cited but not reported), 73 Va. (32 Gratt.) 365 (1879); *Stonestreet* v. *Doyle* (1881), 75 Va. 356, 40 Am. Rep. 731.

In the case of *Protestant Episcopal Educational Society* v. *Churchman* (1885), 80 Va. 718, and that of *Trustees* v. *Guthrie* (1889), 86 Va. 123, 10 S. E. 318, 6 L. R. A. 321, the holding in the *Gallego Case* is criticized and there is *dicta* overruling that case, but in both cases the devise was to a corporation for a purpose embraced in its charter, which has always been recognized as the law of this State. These cases, however, signify a tendency on the part of this court to repudiate the doctrine announced in the *Gallego Case* and to follow the doctrine declared in the *Girard Will Case*, 2 Howard 127, 196, 11 L. Ed. 205, where the Supreme Court of the United States, in an opinion delivered by Justice Story, stated that the statement by that court, in the case of *Philadelphia Baptist Association* v. *Hart*, that the English doctrine of charitable uses had its origin in the statute of 43 Eliz. was a mistake, and that the error occurred by reason of the fact that so many of the English decisions were not available to the members of the profession on this side of the Atlantic at the time that case was decided, and that in some of the cases which were available there were expressions from the English courts which led the Chief Justice into this error. Justice Story further stated that the authorities before him at that time, namely, when he dicided the *Girard Case*, "establish in the most satisfactory and conclusive manner that cases of charities where there were trustees appointed for general and indefinite charities, as well as for specific charities, were familiarly known to, and acted upon, and enforced in the court of chancery. In some of these cases the charities were not only of an uncertain and indefinite nature, but,

as far as we can gather from the imperfect statement in the printed records, they were also cases where there were either no trustees appointed, or the trustees were not competent to take. These records, therefore, do in a remarkable manner confirm the opinions of Sir Joseph Jekyll, Lord Northington, Lord Chief Justice Wilmot, Lord Redesdale, and Lord Chancellor Sugden. Whatever doubts, therefore, might properly be entertained upon the subject when the case of the *Trustees of the Philadelphia Baptist Association* v. *Hart's Executors*, 4 Wheat. 1 [4 L. Ed. 499], was before this court (1818), those doubts are entirely removed by the late and more satisfactory sources of information to which we have alluded."

The court, in *Fifield* v. *Van Wyck* (1897), 94 Va. 557, 27 S. E. 446, 450, 64 Am. St. Rep. 745, construed a will by which was bequeathed the residue of the estate to two named trustees, in trust for the benefit of the New Jerusalem Church, as trustees shall deem best. The bequest was held void for uncertainty of the purpose and the beneficiary. In discussing the *Churchman* and *Guthrie Cases* it is said that these cases were decided on the fact that the donee was incorporated. The court further said: "Their *dicta* (referring to the *Churchman* and *Guthrie Cases*) announce views contrary to a long line of decisions of very able judges, and although their decisions may have been based upon erroneous views as to the powers of courts of chancery over charities at common law, and as to the extent to which the statute of 43d Elizabeth had been or was in force in this State, still those decisions have settled the law upon the subject, except as changed by the legislature from time to time.

"We are unwilling to hold that this line of decisions, running back over a period of more than fifty years, was overturned by expressions of opinion in the *Churchman* and *Guthrie Cases*, not necessary to their decision. If

further changes are necessary or desirable upon the subject, the legislature, the law-making power, and not the courts should make them." See *Jordan* v. *Richmond Home* (1907), 106 Va. 710, 56 S. E. 730, and *Jordan* v. *Universalist Trustees*, 107 Va. 79, 57 S. E. 652.

These decisions establish that the law in Virginia, independent of the statute, is that an indefinite charity, educational, religious, or otherwise, made to an individual or to an unincorporated body, is invalid upon the ground of indefiniteness and uncertainty, but an indefinite charitable bequest or devise to an incorporated body having the same corporate powers or functions as the general object of the testator's bounty is valid.

Such was the law, both as declared by this court and as changed by the General Assembly when in 1914 the amendment heretofore quoted was adopted. The entire section reads as follows, the amendment appearing in italics. "Every gift, grant, devise or bequest which, since the second day of April, in the year one thousand eight hundred and thirty-nine, has been, or at any time hereafter shall be, made for literary purposes, or for the education of white persons, within this State, and every gift, grant, devise, or bequest which, since the tenth of April, in the year one thousand eight hundred and sixty-five, has been, or at any time hereafter shall be, made for literary purposes, or for the education of colored persons within this State, *and every gift, grant, devise or bequest hereafter made for charitable purposes*, whether made in *any* case to a body corporate or unincorporated, or to a natural person, shall be as valid as if made to or for the benefit of a certain natural person, except such devises or bequests, if any, as have failed or become void by virtue of the seventh section of the act of the General Assembly passed on the said second of April, eighteen hundred and thirty-nine, entitled 'an act concerning devises made to schools, academies, and

colleges.' Nothing in this section shall be so construed as to give validity to any devise or bequest to or for the use of any unincorporated theological seminary."

The question before the court is, does the above amendment make valid a bequest and devise which without it is admittedly invalid? The appellants contend that the amendment cannot be construed to extend to all charities any other or additional validity than that which had already been given to educational and literary charities prior to the amendment, and that these sections of the Code only made valid charitable gifts when, and only when, the donee is either a corporation, a county, or a natural person.

These provisions dealing with charities for literary purposes have been before this court for construction in numerous cases heretofore cited, one of which cases is that of *Kelly* v. *Love*, 20 Gratt. (61 Va.) 124, where Judge Staples, in discussing that act, which is practically the same as section 587 of the 1919 Code without the amendment of 1914, stated that the legislature by the act "declared its pleasure to be that all such devises and bequests (for literary purposes) should be valid," with certain exceptions with which we are not here concerned.

This section was again construed in *Roy* v. *Rowzie*, 25 Gratt. (66 Va.) 599, wherein was involved the validity of a bequest to an incorporated theological seminary in South Carolina. At that time the section excluded theological seminaries from the terms of its provisions. The court upheld the bequest on the ground that the gift was to a corporation for a purpose within its charter powers, and stated that: "We think its (section 2, Code 1849) only purpose was, and (the) only effect is, to make valid a certain class of indefinite charities, to-wit, charities for literary purposes * * * which had never been valid before * * *. They (Acts 1839–1841) were enabling acts."

The only case to which our attention has been called, or which we have found, where a gift for an educational pur-

pose was held invalid under this act is that of *Com. of Virginia* v. *Levy*, 23 Gratt. (64 Va.) 21, wherein Monticello and other property was devised (1) to the people of the United States for the purpose of the establishment and maintenance of an agricultural school at Monticello for educating as practical farmers the children of warrant officers of the navy of the United States; if the United States declined to accept the trust the property was then to go to the State of Virginia for the same purpose. The executors instituted suit in New York, asking for instructions of the court in their administration. In that suit the United States was a party, but Virginia was not. The New York court held the gift void, both as to the real and personal property in the State of New York and as to the land in Virginia. Later a partition suit for Monticello was instituted by the heirs in this State. This court held that it was bound by the decision of the New York Supreme Court, but in the course of its opinion expressed doubt whether the devise in question could be brought within the operation of the Virginia statute, inasmuch as the statute at that time only provided for the education of white persons within the State, while the devise extended to persons without regard to race, complexion or residence. The court based its decision, however, on the ground that it was bound by the decision of the New York court.

In the case of *Stonestreet* v. *Doyle* (1881), 75 Va. 356, 40 Am. Rep. 731, the testator devised to trustees named in the will certain real estate for the establishment by them of a free school, or academy, for the education of poor children. This case involved a will probated prior to the act of 1839. The decision, therefore, was not based on the statute.

We find since 1849 no Virginia authority holding a devise to an unincorporated body for a literary purpose invalid. It is true, as the appellants contend, that section 8 of the

Code of 1849, which is practically the same as section 588 of the Code of 1919, authorizes three classes of persons to act as trustees, namely, a corporation, a county, or a natural person. Section 587, the validating section for charitable purposes, uses language which is clear and plain, namely, that "every gift * * * made for a charitable purpose * * * shall be as valid as if made to or for the benefit of a certain natural person;" the clause, "whether made in any one case to a body corporate or unincorporated, or to a natural person," is used parenthetically, but there is no apparent intention in the use of this clause to restrict or limit the positive mandate of the principal clause making gifts for charitable purposes valid.

Sections 588, 589 and 590 provide a method for the enforcement of such trusts as are made valid by section 587. Section 588 authorizes the State Board of Education, a corporation, a county, or a natural person, when named in the instrument creating the trust, to take and hold the property for the use prescribed, but does not include an unincorporated association. The general rule is that such a body is incapable of acting as trustee, as it has no means of keeping up its existence except by the mutual consent of its members, is fluctuating, and is at all times liable to become dissolved. See 2 R. C. L. Supplement 1358 and cases there cited; 11 C. J. 337; *East Haddam, etc. Church* v. *East Haddam, etc. Society*, 44 Conn. 259; *Tilden* v. *Green*, 130 N. Y. 29, 28 N. E. 880, 14 L. R. A. 33, 27 Am. St. Rep. 487.

In view of the Virginia decisions, the history of the legislation validating charitable trusts, and the fact that the Conference Board of Finance is an unincorporated association elected by 835 other unincorporated bodies, some resident and some non-resident, we are of opinion that it is not a competent trustee to receive, invest and distribute the property here in question.

■ Does the fact that no trustee, or that an incompetent trustee, is named in the will make the gift void?

The jurisdiction of the Court of Chancery in England in relation to charities was derived from three sources: (1) From its ordinary jurisdiction over trusts. (2) From the prerogative of the Crown. (3) From the statute of 43 Elizabeth. It has been definitely decided that this statute is not in force in this State, nor have we the prerogative of the Crown, or the doctrine of *parens patriae*. Lord Rodesdale defines this doctrine as follows: "The right which the attorney-general has to file an information is a right of prerogative; the king as *parens patriae* has a right, by his proper officer, to call upon the several courts of justice, according to the nature of their several jurisdictions, to see that right is done to his subjects who are incompetent to act for themselves, as in the case of charities and other cases; the case of lunatics, where he has also a special prerogative to take care of the property of a lunatic; and where he may grant the custody to a person, who, as a committee, may proceed on behalf of the lunatic; or where there is no such grant the attorney-general may proceed by his information." *Attorney-General* v. *Mayor, etc. of Dublin*, 1 Bligh (N. S.), R. 312.

■■ The decisions in this State have declared that the principles applicable to charitable trusts are the same as those applicable to private trusts, except where changed by the legislature. It is one of the maxims of equity, certainly applicable to private trusts, that "equity will not permit a trust to fail for want of a competent trustee." In the application of this doctrine to private trusts, however, the beneficiary is certain and may convene all parties before the court and ask for the appointment of a trustee. This cannot be done in a charitable trust because the beneficiaries are not named, are at large, or are uncertain individuals, and no one of them has a right to sue or be sued re-

specting the trust property, and unless statute has intervened no one is entitled to appear for them, as we have no officer who has the right to exercise the doctrine of *parens patriae*. This is the basis on which the courts in some of the States hold a trust void where the instrument creating it fails to name a trustee, or names an incompetent trustee, such as a voluntary organization. *Ewell* v. *Sneed*, 136 Tenn. 602, 191 S. W. 131, 5 A. L. R. 303; *Owens* v. *Miss. Society of M. E. Church*, 14 N. Y. 380, 67 Am. Dec. 160; 3 Pom. (4th edition), section 1026.

In Virginia this defect has been cured by section 589 wherein it is made the duty of the Commonwealth's attorney to have such a will recorded, and by section 590 authorizing the Commonwealth's attorney where no trustee has been appointed, or where the trustee has been appointed and dies, or refuses to act, to make the proper motion before the court for the appointment of such trustee. By the same section, as amended in 1906 (Acts 1906, chapter 23) such trustee, by whomever appointed, shall render an annual account before the proper officer of the court, as any other fiduciary, and if the trustee fails in the execution of his trust suit may be brought in the name of the Commonwealth, where there is no definite beneficiary capable of prosecuting such suit. The statute, then, declares that no trust for charitable purposes shall fail for want of a trustee named in the instrument, or for refusal of the trustee named to execute the trust. By the language used it seems clear that the legislature did not intend a charitable trust to fail where the trustee named in the instrument was incompetent to act. This is the rule in many States, independent of statute. See *Stowell* v. *Prentiss*, 323 Ill. 309, 154 N. E. 120, 124, 50 A. L. R. 584, where it is said: "Equity will not permit a trust otherwise valid to fail for want of a trustee or because the trustee designated is incompetent to act. 3 Pom. Eq. Jur. (3d ed.) section 1026;

1 Perry, Tr. and Trustee, 6th ed. section 45; *Wittmeier* v. *Heiligenstein*, 308 Ill. 434, 139 N. E. 871; *Churchhill* v. *Marr*, 300 Ill. 302, 133 N. E. 335. The deed from Parkhill expressly recited that it was the intention to convey the spring to the public. A trust was created which was enforceable in a court of equity."

In the case of *Tillinghast* v. *Council at Narragansett Pier*, 47 R. I. 406, 133 Atl. 662, 46 A. L. R. 823, the devise under consideration was: "(7) I give and bequeath the sum of fifty thousand dollars ($50,000) to the Council of Narragansett Pier, Rhode Island, of the Boy Scouts of America, to be used under the supervision of the proper officials of that organization to aid the carrying on its work and effecting its admirable purposes." There was no organization in existence under the name of the "Council at Narragansett Pier, Rhode Island, of the Boy Scouts of America," but there was a voluntary organization known as "Veteran Troop No. 1 of Narrangasett Pier, Rhode Island, of the Boy Scouts of America." Held: "We find that the testatrix intended to make the gift in question for the support of the boy scout work of Veteran Troop No. 1, and we shall treat the gift as though said Veteran Troop No. 1 had been correctly designated by the testatrix. It is well settled that the misnomer of a legatee is immaterial, if the person intended can be identified by the description in the will. *Guild* v. *Allen*, 28 R. I. 430, 67 Atl. 855; *Peard* v. *Vose*, 19 R. I. 654, 35 Atl. 1045 * * *.

"Veteran Troop No. 1, as a voluntary unincorporated association, is legally incapable of receiving and administering this gift under the decisions of this court (*Wood* v. *Fourth Baptist Church*, 26 R. I. 594, 61 Atl. 279; *Guild* v. *Allen*, 28 R. I. 430, 67 Atl. 855), but 'equity will not allow an otherwise valid charitable trust to fail for want of a competent trustee, but will appoint one to take the trust

property and carry out the charitable intent of the donor.'
\* \* \*

"We will not permit the gift to fail, but will appoint a trustee who is capable of holding the fund and carrying out the intention of the testatrix."

See *Bruers* v. *Cook*, 63 N. J. Eq. 624, at page 629, 52 Atl. 1001, 1003, where it is held: "The misnomer of the legatee who should in the first place receive and apply the fund, or the selection of one who does not have the power or equipment to carry the testator's intention into effect, or even the entire omission in anyway to indicate a person or corporation to whom payment of the fund could primarily be made, will not defeat such a gift, if the testator's ultimate object is lawful and is definitely indicated. Equity will not permit a lawful trust to be defeated for want of an efficient trustee."

In the case of *Kinnaird* v. *Miller's Executor, supra*, it is said: "We think that the changes which have been made by the constitution and laws of the State, or either of them, since the date of the said will, or the death of the said testator, in regard to the Board of the Literary Fund, the county court, school commissioners, overseers of the poor, and the second auditor, do not at all affect the validity of the said devise and bequest for the purpose of establishing and supporting a school as aforesaid; that those agencies were merely adopted and pointed out by the testator as a convenient and appropriate means for carrying into execution his main intent to establish and support such a school; that the continued existence of those public agencies, in form or substance, as they were at the date of the will, or death of the testator, were not intended to be conditions of the said devise and bequest."

The true interpretation of the intent of this will is that the testatrix clearly expressed the final purpose she had in view, namely, the creating of a trust of certain

property, the income to be spent for the benefit of a certain class of old, or enfeebled, preachers. She believed that she had indicated a donee, or trustee, to carry her final purpose into effect. Her naming of the trustee is a failure. because she has not in the will clearly identified the party intended, and if the witnesses are correct in stating that the Conference Board of Finance is the society she had in mind, then she has named an incompetent trustee. She has created a trust, however, which is made valid by Code 1919, section 587, and the power for the enforcement of such a trust is provided by sections 589 and 590. It is the duty of the court to appoint a competent trustee to carry out the purpose of the testatrix.

The selection of the beneficiaries from the class named is not personal to the donee. Preachers, classified as superannuates, are named by a committee from the Virginia Conference of the Methodist Episcopal Church, South, with or without the consent of the preachers concerned, a report is kept of all superannuates and a written report is made to every Annual Conference on the condition of each superannuate. (Section 165 of the Discipline.) This information is available to the trustee who will be appointed by the court. The number of superannuates is not very large and, if necessary, the trustee may make independent investigation.

In deciding the questions raised on this appeal, we have excluded from consideration that class of gifts, devises and donations which is controlled by chapter 7 of the Code of 1919 (sections 36-61).

■ We are of opinion that the lower court erred in holding that the Conference Board of Finance is a body capable of acting as trustee under the third clause of the will of the testatrix, but the decree of the lower court in all other respects is affirmed. An order will, therefore, be entered remanding the case, with directions to the chancery

court that, on motion of the Commonwealth's attorney for the city of Richmond, it appoint one or more suitable trustees to take and hold the property bequeathed and devised under the third clause of the will of the testatrix and distribute the income therefrom in accordance with the provisions of the will.

*Reversed in part and remanded with directions.*