# Richmond

BEVERLEY RANDOLPH WELLFORD, ET. AL. v. LEWIS F. POWELL, JR., ET AL. &c., ET AL.

January 16, 1956.

Record No. 4441.

Present, Hudgins, C. J., and Eggleston, Spratley, Smith and Whittle, JJ.

The opinion states the case.

*Stuart G. Christian, A. B. Scott* and *J. McDonald Wellford,* for the appellants.

*J. Elliott Drinard* and *John P. McGuire, Jr.,* for the appellees.

WHITTLE, J., delivered the opinion of the court.

Alice Montague Gregory, et al., next of kin of Otway S. Allen, deceased, and Beverley Randolph Wellford, et al., next of kin of Mary McDonald Allen, deceased widow of Otway S. Allen, appellants, were granted an appeal from a decree entered by the court be-

low in which a clause in the will of Otway S. Allen was construed unfavorably to them and favorably to the School Board of the City of Richmond, et al., appellees.

The decree appealed from appointed the School Board of the City of Richmond substituted trustee to carry into execution the gift under the will of the testator "in accordance with the provisions of the will and the provisions of §§ 55-27 and 55-29 of the Code of Virginia, in the place and stead of Virginia Mechanics Institute, dissolved by decree of the Circuit Court of the City of Richmond on February 17, 1943."

Appellants assign three errors challenging the court's ruling:

1. In holding that the legacy passed to the school board as substituted trustee, to be used for general educational purposes, in view of the fact that the Virginia Mechanics Institute mentioned in the will has ceased to exist.

2. In holding that "the general and leading intention of the testator (was) to dedicate this estate to the purposes of education", as distinguished from the specific and express intent to benefit only the named beneficiary, viz., the Institute.

3. In holding "that Code, §§ 55-26, 55-27 and 55-29, making gifts for education", whether made to a "body corporate or unincorporated, or to a natural person * * * as valid as if made to or for the benefit of a certain natural person", and providing certain administrative procedures, were applicable to said legacy in the will of said decedent, for the reason that at the time of the probate of said will the Institute was a body corporate existing under the laws of Virginia, and therefore the gift, the enjoyment of which was postponed until the death of the life tenants without issue, needed no statutory validation, "from which it follows that the above referred to sections are inapplicable to this case and should have no weight or effect in solving the issues presented."

The assignments of error are closely related and will be considered together.

▉▉ The record discloses that Allen executed his will on July 14, 1906. He died approximately five years later. The will was probated on February 24, 1911. The provision to be construed involves the clause in which the testator left two-thirds of his estate to a trust company in trust for his sister, Mary C. Sheppard and her three children, for her lifetime and the lifetime of the children. Following this disposition the will provides:

"Upon the death of the last survivor of them (the sister and her children), I give one-third of the fund so left in trust to the issue of each of my said sister's three children taking *per stirpes*. In the event that any of said children dies without issue, I give the portion that the issue of such child would have been entitled, to Virginia Mechanics Institute of Richmond, Virginia, to be used by the Board of Directors thereof for the endowment of such branch of their work as they may consider most conducive to the objects of the said institution, to be designated as the 'Wm. C. Allen and Allaville Allen School of ——', as a memorial to my parents."

It will here be noted that the testator provided that "in the event that any of the said children dies without issue" the portion going to such child was given to the Institute rather than divided, as is frequently done, among the surviving children.

Another clause in the will which has bearing on the issue reads:

"I have made no provision herein for my sisters, Bettie F. Gregory and Martha A. Wise, further than to leave them the articles mentioned in the second and fifth clauses because I consider that they are both amply provided for and any legacy to them would be not needed."

This clause in the will definitely excludes the parents of the appellants, making it evident that it was Allen's definite intention that in the event "any of the children" referred to in the clause above dies without issue such portion of the estate going to such child would vest in the Institute.

The chancellor in the court below filed a written opinion with the decree appealed from in which he says:

"Virginia Mechanics Institute at the time of the execution of this will and at the time of the testator's death, and for over thirty years thereafter, was a non-profit, non-stock Virginia corporation. Its purposes as disclosed by the charter were mainly educational; and its functions throughout the years before and after the death of the testator were, as I gather from the record, exclusively educational. These purposes and functions were to provide and give instruction in a particular kind of education; which is sometimes referred to as vocational training—more specifically education afforded to adults who work in the daytime and desire to improve themselves and advance their education by study at night. [See Amendment to Charter, Acts of Assembly, 1901-02, Ch. 2, page 4.]

"That the institution was essentially an educational institution of this character is not disputed. That the gift made by the will was for educational purposes is indicated by the character of the institution chosen to administer it, Virginia Mechanics Institute. This is further evidenced by the direction in the will that the endowment should be 'designated' (that is the word of the will) as the 'Wm. C. Allen and Allaville Allen School of ——'; the word 'school' following the intent and emphasizing the purpose as educational."

While aided from time to time by benevolent citizens and by grants from the City of Richmond, the Institute was unable to continue to operate, and a plan was made whereby the functions of the Institute could be taken over by the School Board of the City of Richmond, a body corporate. A contract to this effect, signed in 1942, and a deed executed in February, 1943, conveyed all property of the Institute "that was capable of transfer to the School Board of the City of Richmond", to the said board. This deed and assignment were duly approved by the Circuit Court and the charter of the Institute and its corporate existence were thereupon terminated. The foregoing proceedings occurred while the three children of the testator's sister, Mary Sheppard, were living; all three dying later without issue; their mother having predeceased them.

In the course of his written opinion the chancellor said:

"It is a concessum that the gift under the will 'came to Virginia Mechanics Institute impressed with a trust.' (The language quoted is the exact language of counsel for the Allen heirs.) It is therefore plain that Virginia Mechanics Institute took the gift not in its own right but as trustee; that it occupied the position of a fiduciary *quoad* this gift—and this, because the testator by his language set apart this property for educational purposes; to use the words of Judge Moncure in *Kinnaird* v. *Miller's Exor.*, 25 Grat. 107, at page 124, 'the general and leading intention to dedicate this estate to the purposes of education * * * is clearly established.' There was such a dedication here.

"The method of handling is indicated. The fund was to be set apart, earmarked as an 'endowment', the corpus to be preserved intact. It was to be given a name and designated the 'Wm. C. Allen and Allaville Allen School of ——', as the will says. Out of this fact of dedication grows the trust or fiduciary relationship of Virginia Mechanics Institute as taker under this clause of the will. It took in 'right'; and if its existence had continued it would eventually have

taken in possession; not in its own right but as trustee, charged with the duty to see that the purposes to which the fund was dedicated were carried out."

The Institute was trustee under the will and the *cestuis* were those who were to receive the benefits of the fund, *viz.*, the students who would seek to avail themselves of vocational training. Such students were the beneficiaries of the trust which was ordained for the purpose of "assisting them to establish themselves for life". *Allaun* v. *First Etc. National Bank* (1949), 190 Va. 104, 108, 56 S. E. (2d) 83, 85. The trust was dedicated to *education*, and a particular kind of education, primarily vocational; in the main benefiting adults who work by day and study by night.

It is argued that the bequest here involved was made to the Institute as such because the testator had special confidence in its board of directors, and therefore when the charter was surrendered the bequest lapsed. With this we do not agree. The testator knew that the members of the board were elected annually, and necessarily changed from time to time. Between the date of the will and the vesting of the gift there was a lapse of forty years, over which period the personnel of the board had changed many times. Surely the testator could not have intended to place his confidence in a board of directors the personnel of which he could not envision.

The rights of the parties under the will were fixed and determined as of the date of the testator's death, subject only to the contingency which did not happen so as to prevent the vesting of the estate in the institute.

Gifts of the nature here involved are viewed with favor by the courts and every presumption consistent with the language used will be employed to sustain them. *Fitzgerald* v. *Doggett's Ex'or.*, 155 Va. 112, 155 S. E. 129; *Thomas* v. *Bryant* (1946), 185 Va. 845, 852, 40 S. E. (2d) 487, 490; *Allaun* v. *First Etc. Natl. Bank, supra*, 190 Va., at p. 109, and cases therein cited.

It is clear in this instance that the beneficiaries of the testator's bounty were future vocational students such as those normally receiving instruction from the Virginia Mechanics Institute, which class of instruction and curriculum has been fully assumed by the School Board of the City of Richmond. It is further clear that the testator did not intend his heirs at law [the appellants here] to receive any part of this gift, they being expressly excluded under the will.

██ Aside from the above cited authorities the unambiguous statutes of this State demonstrate the correctness of the decision of the learned chancellor. Code, §§ 55-26, 55-27 and 55-29 (with the exception of an inapplicable change made in § 55-26 in 1914) were, at the time of the testator's death, in the identical language as now. While § 55-26 may not have been necessary to validate the Allen gift, it describes the kind of gift which, under §§ 55-27 and 55-29 will not be permitted to fail for the want of a trustee but will be administered by a substituted trustee appointed in the manner provided by § 55-29. For this reason we are in accord with the chancellor's treatment of these statutes as applied to the case. He says:

"Now we shall proceed to lay the will by the statutes:

"Leaving out the unimportant part this is a devise and a bequest for 'education'. The statute does not say broad education or limited education. The statute says that 'a devise or bequest *for education* made to a body corporate or unincorporated or to a natural person' *shall be valid*. The court has found that the provision of the will here under scrutiny dedicates the fund, in the contingency mentioned, to education. Under the plain language of the statute (Code, Sec. 55-26) the gift stands and the trust is *valid*.

"But the trustee is dead, as counsel say, using figurative language, in which the court concurs. Do not we then turn to that other statute, Code, Sec. 55-29?

" 'When any such gift, grant or will is recorded and no trustee has been appointed,'—

"That's not this case—

" 'When any such gift, grant or will is recorded * * * and the trustee dies or refuses to act,'—

"This trustee (the Institute) figuratively speaking is dead, it voluntarily surrendered its corporate charter in 1943, thus committing suicide—disabled itself to perform its fiduciary duties and therefore refuses to act,—that's this case—

" 'the court may * * * on motion of the attorney for the Commonwealth * * * (whose duty it shall be to make such motion) appoint one or more trustees to carry the same into execution.' [§ 55-29]

"The statute goes on to provide, as a matter of machinery, that the trustee so substituted shall settle annual accounts before the Commissioner of Accounts as other fiduciaries are required to do.

"Though the court is clearly of opinion and holds that no property right or title of any kind passed from Virginia Mechanics Institute to

the School Board by the proceedings and the transactions in 1942 and 1943, yet these transactions are of a certain significance in the case. That is because they tended to prepare the School Board as an appropriate trustee, capable of carrying out these trusts, willing and prepared to do so. It undoubtedly succeeded to many of the assets, the building itself, I believe. It has prepared itself by those and other proceedings taken more recently to carry out the provisions of this will; certainly not with greater departure or alteration than, to meet modern conditions, the Board of Directors of Virginia Mechanics Institute might have approved and made. Forty-eight years is a long time. The board of that institution, if it had survived, might well have thought it wise to abandon some of its courses of study when facilities for similar courses were available elsewhere in the City of Richmond. Courses and activities do not now have to be identical with those in vogue in 1911. The board was a changing body. Conditions also change with time. The board might well have changed, enlarged or curtailed, its activities and still be well within the broad scope of its [the Institute's] charter powers.

"The court has no reason to believe that the changes made and to be made by the School Board are or will be greater. The purpose of this trust will be adequately and fairly carried out, in the judgment of the court, if the new trustee sets the trust fund apart as an endowment and uses the income for one or more of its education objects, designating one of its branches as the 'Wm. C. Allen and Allaville Allen School of' English, or Typewriting, or Stenography, or Welding, or any other of the branches taught.

"By the transactions and proceedings in 1942 and 1943 and by its subsequent actions the School Board of the City of Richmond has fitted itself as a proper corporate body to be nominated by the attorney for the Commonwealth as Substituted Trustee in the room and stead of Virginia Mechanics Institute. The court will grant the motion and make the appointment."

The court's decree provided:

"And the court will at the appropriate time direct that the fund be delivered to the School Board of the City of Richmond as substituted trustee for administration in conformity with the will and in form and manner as the law provides."

For the reasons stated, the decree is affirmed and the case remanded for further proceedings in accordance therewith.

*Affirmed and remanded.*