# Richmond.

## EDWARD ARVIN, ET AL., V. MOLLIE A. SMITH'S EXECUTORS, ET ALS.

### May 28, 1925.

1. WILLS—*Whether Will Applies to Real Property*—"*Bequests*"—"*Balance*" —*Case at Bar.*—A testatrix by her will gave legacies which amounted to $7,900.00. At the date of the execution of her will the total value of her estate was $8,000.00, $4,000.00 of which was personal and $4,000.00 real estate. At her death this had increased to $7,600.00 in personalty, and real estate to the value of $8,000.00. Complainants alleged that testatrix died intestate as to her real property which the residuary legatees denied. The residuary clause was as follows: "If any is left after these bequests, I wish to give two hundred dollars ($200.00) to the Presbyterian Orphanage at Lynchburg, Virginia. And the balance, if any, I desire to be equally divided between" naming three beneficiaries.

   *Held:* That it was the intention of the testatrix to dispose of all the estate both real and personal.

2. WILLS—"*Bequest*" *Generally Applies to Personality*—"*Balance.*"—Where a testatrix, after giving certain specific legacies, provided "If any is left after these bequests, I wish to give two hundred dollars ($200.00) to the Presbyterian Orphanage at Lynchburg, Virginia." Attaching to "bequests" its ordinary definition all the gifts theretofore made would appear to be charges upon the personal estate only, and if this will had closed at this point it is plain that testatrix would have died intestate as to her real property. But the will went on further to provide "and the balance, if any, I desire to be equally divided between" three named beneficiaries. "Balance," is not a technical expression but one in common use and its definition of necessity varies with conditions under which it is used, and in the instant case, applied to testatrix's real property as well as her personalty.

3. WILLS—*Presumption against Intestacy.*—The judicial expositor of a will starts out with the presumption that the testator intended to dispose of his entire estate, and partial intestacy will not be presumed unless it is absolutely unescapable.

4. WILLS—*Construction—Extraneous Evidence.*—Extraneous evidence is not competent to explain a will which needs no explanation. But in

many cases language is to be found in a will which appears to be susceptible of more than one interpretation. In such case resort may be had to extrinsic evidence, subject to certain reasonably well defined limitations.

5. WILLS—*Construction—Situation of the Parties.*—In the construction of ambiguous expressions the situation of the parties may very properly be taken into view; the ties which connect the testator with his legatees; the affection subsisting between them; the motive which may reasonably be supposed to operate upon him and to influence him in the disposition of his property, are all entitled to consideration in expounding doubtful words.

6. WILLS—*Intention Paramount.*—The intention of the testator when not unlawful and capable of ascertainment must be respected.

7. WILLS—*Whether Will Intended to Dispose of Both Personal and Real Property.*—Where a testatrix's real and personal property was worth about $8,000.00, $4,000.00 real and $4,000 personal property, and her will contained bequests that absorbed $7,900,00, and a few months later another gift was made by codicil of $200.00 and the will contained a residuary clause giving to those nieces to whom testatrix was particularly attached the "balance" of her estate, it is not to be believed that testatrix undertook to dispose of her personal property alone.

8. WILLS—*Construction—Technical Terms.*—Undue weight should not be given to technical terms in a will. Thus one who speaks of an executor as an administrator may well use the word "bequests" as the synonym of gifts.

Appeal from a decree from a Circuit Court of Charlotte county. Decree for defendant. Complainant appeals.

*Affirmed.*

The opinion states the case.

*Geo. E. Allen,* for the appellants.

*Hutcheson & Early,* for the appellees.

HOLT, J., delivered the opinion of the court.

Mrs. Mollie A. Smith died in December, 1922, leaving a will in her own hand, of date January 1, 1915

There are attached to it three codicils, also written entirely by herself, one dated July 18, 1916, and two undated. She was eighty-two and had been a widow for many years. There were no children and no brothers or sisters living at her death. The next of kin were thirteen nieces and nephews, four of whom, the children of Elizabeth Arvin, a deceased sister, are plaintiffs here, the others defendants. For a number of years prior to her death she had lived at "Clifton House," the hotel property in controversy in this suit, and at the time of her death was living with Hugh W. Watkins, a nephew and one of her executors to whom she had rented it. She was careful and painstaking and kept an accurate account of her business transactions. The will is as follows:

"In the name of God, Amen.

"I, Mollie A. Smith, of the county of Charlotte, and State of Virginia, being of sound and disposing mind, do hereby declare this to be my last will and testament, revoking all others.

"After the payment of my just debts, I give and bequeath to my nieces, Mrs. Isla Belle Wood, Mrs. Emma Lucile Parrott, Mrs. Grace Mosely and my nephew Hugh Wharey Watkins, and my great niece, Mrs. Florence J. Tinder, the sum of one thousand dollars ($1,000.00) each. To my niece, Ruth Lozetto, and my nephew, Norborne Jackson Arvin, I give the sum of five hundred dollars ($500.00) each.

"To nieces, Mrs. Mary Anderson Cantewell, of Wilmington, N. C., Mrs. Ada Purcell, of Columbus, Georgia, Nannie Lanier Watkins, wife of Hugh Wharey Watkins, my step granddaughters, Mrs. Mattie Williams, Mrs. Louise Morris, Mrs. Sallie Nottingham, Miss Bessie Rice, and my nephews, Edward Arvin, Walter Arvin, Otis Arvin, and Edward Dawson Watkins, the sum of

one hundred dollars ($100.00) each.    I also give to Mrs. Mattie Williams my black marble top table, and at her death to go to Mrs. Louise Morris.    My bookcase and all of my books, I give to Florence J. Tinder.    My wearing apparel, furniture, sewing machine, trunks, jewelry, and all other appurtenances I leave in the hands of Isla Belle Wood and Emma Lucile Parrott to be divided among themselves, Grace Mosely, Ruth Lozette, Nannie Lanier Watkins and Florence J. Tinder, as they think best, believing they will do what is right and just.

"To my great nephew, Garland Watkins Wood, I give and bequeath ten (10) shares in the State Bank of Charlotte County, to be held in trust for him by the administrator, Dr. C. W. Tucker, until he is twenty-one years old.

"I give to Lillian Chalkley and Marion Chalkley fifty dollars ($50.00) each.

"If any is left after these bequests, I wish to give two hundred dollars ($200.00) to the Presbyterian Orphanage at Lynchburg, Virginia.    And the balance, if any, I desire to be equally divided between Isla Belle Wood, Lucile Parrott and Florence J. Tinder.

"I appoint Dr. C. W. Tucker as administrator, without security.

"Given under my hand and seal this 1st day of January, 1915.

"(Signed) MOLLIE A. SMITH (Seal)

"Codicil.

"I give to my great, great niece, Mary Anderson Tinder, eight shares in the 1st National Bank of Chase City and to my great great nephew Benjamin Spencer Tinder I give the sum of two hundred ($200.00) dollars.

"Given under my hand and seal this 18th day of July, 1916.

"MOLLIE A. SMITH (Seal)

"I made this change for Mary Anderson.
                    "MOLLIE A. SMITH.

"I also appoint Hugh W. Watkins co-administrator
to act with Dr. C. W. Tucker, without bond.
                    "MOLLIE A. SMITH."

It appears that all of these nieces and nephews are
remembered except Roger Chafin, and this because she
did not know he was alive.    There is evidence to show
the residuary legatees, Isla Belle Wood, Florence J. Tin-
der, her daughter, and Lucile Parrott, were particu-
larly the objects of her affection, while the intercourse
between her and the plaintiffs, who lived in an adjoin-
ing county, was casual only.    In the will are the fol-
lowing legacies:

| | |
|---|---:|
| To five beneficiaries $1,000.00 each | $5,000.00 |
| To two beneficiaries $500.00 each | 1,000.00 |
| To eleven beneficiaries $100.00 each | 1,100.00 |
| To Garland W. Wood, bank stock (estimated) | 500.00 |
| To Lillian and Marian Chalkley, friends | 100.00 |
| To Presbyterian Orphanage | 200.00 |
| | $7,900.00 |

At the date of its execution the total value of her es-
tate was about eight thousand dollars, four thousand of
which was personal and four thousand real.    Appel-
lants say that at her death there was $7,600.00 in per-
sonalty and real estate of the value of $8,000.00.    The
increase in the value of personalty was due to economy
and good management, and in the value of realty to gen-
eral conditions.

[1] This on its face is a suit for partition and it is charged in the bill that Mrs. Smith died intestate as to her real property.   The residuary legatees in their answer deny this.   In due course this issue was submitted for decision and that decision is embodied in the decree of July 31, 1923, from thich this appeal is taken. It is in part as follows:

"And the court proceeding to construe the will of Mollie A. Smith, deceased, is of the opinion and doth decide, and doth adjudge, order and decree, that according to the true construction of the will of the said Mollie A. Smith, deceased, it was her intention to dispose of all the estate, both real and personal, of which she should die seized and possessed by her said will and to blend her real and personal estate into one common fund, out of which her executors should pay her debts and should satisfy in full all the general pecuniary legacies of said will, and should pay the balance, if any, to Emma Lucile Parrott, Isla Belle Wood and Florence J. Tinder as residuary legatees; and that the said Mollie A. Smith did not die intestate as to the real estate in the bill mentioned."

[2] This will deals in detail with the testatrix's estate. She remembered each of her kin who would have taken under the statute of distribution and she remembered certain of her friends in a modest way and in keeping with the claims of others, after which it is provided: "If any is left after these bequests, I wish to give two hundred dollars ($200.00) to the Presbyterian Orphanage at Lynchburg, Virginia."   Attaching to "bequests" its ordinary definition, all the gifts theretofore made would appear to be charges upon the personal estate only, and if this will had closed at this point it is plain that she would have died intestate as to her real property.   But it goes on to provide: "And the balance, if any, I desire

to be equally divided between Isla Belle Wood, Emma Lucile Parrott, and Florence J. Tinder."

What is meant by this word "balance?" Is it to be limited to the balance of the personal estate after the payment of the bequests noted, or must a broader view attach and does it mean the balance of this testatrix's entire estate. It is not a technical expression, but one in common use and its definition of necessity varies with the conditions under which it is used.

[3] In *McCabe* v. *Cary*, 135 Va. 428, 116 S. E. 485, Judge Burks laid down the proposition that the judicial expositor of a will starts out with the presumption that the testator intended to dispose of his entire estate. In *Coffman* v. *Coffman*, 131 Va. 456, 109 S. E. 454, the court said that partial intestacy would not be presumed unless it was "absolutely unescapable," while in *Miars* v. *Bedgood*, 9 Leigh (36 Va.) 361, the same view was thus expressed, "unless absolutely forced upon" us.

Giving force to this presumption and to the indeterminate definition of the word itself it seems proper that we should look, not to declarations of intention, but to surrounding facts and circumstances that we may be aided in determining what "balance" means.

[4, 5] Of course, we are not unmindful of the proposition that extraneous evidence is not competent to explain a will which needs no explanation, or as this idea was expressed in *Coffman* v. *Coffman, supra:* "The proper use of extrinsic evidence in aid of the interpretation of wills may be regarded as reasonably well settled. It cannot be used at all if the will is plain and unambiguous, for 'it is not permitted to interpret that which has no need of interpretation.' But there are many different ways of expressing the same thought; there are many varying shades of meaning which a group of words may have; men differ much in their knowledge of lexi-

cography and grammar, and in their facility of expression; and the necessary result is that in many cases language is to be found in a will which appears to be susceptible of more than one interpretation. In such cases resort may be had to extrinsic evidence, subject to certain reasonably well defined limitations." While in *McCabe* v. *Cary, supra,* this language in *Smith* v. *Bell,* 6 Peters 75, 8 L. Ed. 322, is approved: "In the construction of ambiguous expressions the situation of the parties may very properly be taken into view; the ties which connect the testator with his legatees; the affection subsisting between them; the motive which may reasonably be supposed to operate upon him and to influence him in the disposition of his property, are all entitled to consideration in expounding doubtful words."

In *Hatcher* v. *Hatcher,* 80 Va. 169, it is said:

"In order to better comprehend the scheme which the testator had in his mind for the disposition of his estate, the judicial expositor is permitted to place himself, figuratively speaking, in the very shoes of the person whose will he is called on to construe; and, with the aid of such extrinsic evidence as is admissible for the purpose, to possess himself of the conditions of the testator and his family, and of such surrounding facts and circumstances as may be reasonably supposed to have influenced him in the disposition of his property."

[6] Evidence of this character is readily admitted, Schouler on Wills, section 937 and, indeed, is necessary in doubtful cases that we may know the intention of the testator; this intention when not unlawful and capable of ascertainment must be respected. Other tests may fail, but this is the one rule to which we may turn with confidence—"The shadow of a great rock in a weary land."

[7] When admitted a lane of light falls across the case.

We find the testatrix to be accurate and careful in matters of business.   We find that she, at the time this will was written, was worth about eight thousand dollars, and we find bequests that absorb seven thousand nine hundred dollars.   And we find a few months afterwards, when additional interest had been collected, another gift of two hundred dollars.   It cannot readily be believed that in these circumstances she undertook to dispose of her personal property alone and went through the solemn form of writing into her will bequests, half of which only could be paid, and gave to those nieces to whom she was particularly attached as a mark of her affection residuary bequests, charges on a "balance" worth four thousand dollars less than nothing.

Mr. Justice Strong in *Given* v. *Hilton*, 95 U. S. 591, 24 L. Ed. 458, said:

"In the present case it is quite plain the testator had in mind all his estate, whether realty or personalty, when he made the disposition of the residue.   Indeed, he must have had his real estate, or the proceeds of its sale, mainly in view, for, as we have said, he knew that his personal estate would be exhausted by the payment of debts and prior legacies."   Another rule would "keep the word of promise to our ear and break it to our hope."

If, on the other hand, "balance" be held to mean the residue of the testator's estate and not the remainder of the personalty, we have a will eminently just, one which gives to the natural objects of the testator's bounty her entire estate and no more.

[8] No next of kin were forgotten, and there were no children asking to be remembered.   Undue weight should not be given to technical terms.   One who spoke of an executor as an administrator may well have used "bequests" as the synonym of gifts.

The suit of *Neblett* v. *Smith, post* page 840, 128 S. E. 247, this day decided, is in many respects a companion case to this and it has not been deemed necessary to re-state here much that has been written there; the same law in many of its phases applies equally to both cases.

We find no error in the decree appealed from and it is affirmed.

*Affirmed.*