# Richmond

## LUTHER H. ROLLER AND OTHERS v. S. W. SHAVER, EXECUTOR AND BETTIE HINTON v. S. W. SHAVER, EXECUTOR.

November 24, 1941.

Record Nos. 2422-2423.

Present, All the Justices.

The opinion states the case.

*George S. Harnsberger,* for the appellant, Roller.

*D. W. Earman* and *Glenn W. Ruebush,* for Hinton.

*Herbert W. Wyant, Thomas M. Anderson* and *Laird L. Conrad,* for Shaver.

BROWNING, J., delivered the opinion of the court.

Our problem is the construction of the will of Edward L. Wise, deceased, who died on March 16, 1939, a widower, leaving no heirs of his body surviving. His

estate was appraised at about $14,000.00. His will is as follows:

"I, Edward L. Wise, being of sound mind and disposing memory, but knowing the uncertainty of life, do make this my last will and testament, hereby revoking all former wills or codicils to wills by me at any time made.

"1st, It is my will that all of my debts be paid.

"2nd, It is my will that a casket and a steel vault be about the same as that furnished by W. L. Rosenberger for my dear wife, Phoebe A. Wise, costing about $300.00.

"3rd, I give to the Trustees of St. Michael's Church Cemetery Fund the sum of $200.00 to be held in trust, the interest accruing from same to be used for the upkeep of my grave lot and said cemetery.

"4th, I give to the Trustees of the Greenwood Cemetery Association of Bridgewater, the sum of $20.00 to be held in trust, the interest accruing from same to be used for the upkeep of said cemetery.

"5th, I give to the Trustees of the Bridgewater Methodist Church $500.00 to be used in their judgment where most needed.

"6th, I give to my sister in law, Bettie Hinton, all of my household property in my home in Bridgewater, Virginia.

"7th, I give to my sister in law, Bettie Hinton, all my real estate to use, provided that she does not give, will or allow to be inherited by any her relatives, or mine, or individual or individuals.

"8th, It is my will after the death of my sister in law, Bettie Hinton, that my Executor hereinafter named shall sell all real estate and personal property, if any, and the proceeds from same be given to the Trustees of some Methodist Institution or Institutions for the poor or what in his judgment is worthy of the same, and any other moneys or bonds.

"9th, I hereby appoint S. W. Shaver Executor of this

my last will and testament and request that no security be required of him.

"Witness my hand and seal to this my last will and testament made and signed at the Planters Bank of Bridgewater, Bridgewater, this 17th day of September, 1936.

EDWARD L. WISE    (Seal)."

It is unnecessary to include the attestation clause.

The contest is a tripartite one. Four grand-nephews of the testator, who are appellants, attack the fifth and eighth clauses of the will urging that they are void and ineffective. The fifth clause, it is said, is void because of its uncertainty and indefiniteness, both as to the party who is to take and the purpose for which the legacy is to be used. And the eighth clause is likewise said to be void for the same reasons and the additional one that it presents a patent ambiguity as to which parol evidence cannot be received to explain it in an effort to determine the intention of the testator. It is also contended that the provisions of section 38 of the Code of Virginia, which are curative, are not applicable to the situation before us.

Bettie Hinton, a legatee and devisee, and also an appellant, urges that under clauses seven and eight she takes a fee simple estate in the real estate left by the testator.

The executor contends that the decree of the trial court is correct in its construction of the will. Its decree holds that the fifth clause is valid and enforceable; that under the sixth clause Bettie Hinton takes the absolute ownership of the household property in the testator's home in Bridgewater, Virginia; that under the provisions of the seventh clause Bettie Hinton takes a life estate only in the real estate; and that under the provisions of the eighth clause, and under sections 587, 588, and 6298a of the Code of Virginia, there is created a valid and enforceable charitable bequest.

In the comparatively recent case of *Trice* v. *Powell,* 168 Va. 397, 401, 191 S. E. 758, this court said, through Spratley, J.:

"Once we are able to ascertain the intention of the testator, we will adopt that as the polar star to guide and direct us, and in ascertaining that intention, we will look upon the instrument as a whole, and give effect, if possible, to every part thereof. If from reading the will as a whole, the testator's intention is clear, it will stand as written; but if such intention is obscured by his modes of expression, we will first ascertain the meaning of the language used before we undertake to effectuate that intention. We will not hesitate to give to the words and phrases used the meanings they have in the usual and ordinary acceptation. If we discover the intention of the testator, even though the language be obscure and uncertain, we shall feel justified in making his will the law of the subject, unless it violates some rule of law. *Conrad* v. *Conrad's Ex'r,* 123 Va. 711, 97 S. E. 336, 337; *Davis* v. *Kendall,* 130 Va. 175, 107 S. E. 751, 759."

With this in mind let us examine somewhat critically the will in question in connection with glimpses of the environment and life of the testator as revealed by it. Evidently he was a loyal adherent of the Methodist Church and we may fairly say that his dominant purpose was to provide as liberally as his means would allow for the needs of his church at Bridgewater. This is the subject of the fifth clause which is an outright gift to the trustees of that church of the sum of $500.00. The words, "to be used in their judgment where most needed", following the figures donating the amount of the gift simply express an attribute of the right already accorded to them. They are mere surplusage, as reasonable and prudent persons would exercise such care in their execution of the trust, without being told that they might do so. Thus we are quite in agreement with the chancellor that the clause referred to is a valid and enforceable bequest.

For the moment we skip to the eighth clause to find justification for the assertion that the testator was most concerned with the welfare of his church, for in that we find that after the death of his sister in law, who is the subject of the sixth and seventh clauses, he empowers his executor to sell all his real estate and personal property, if any, and give the proceeds of such sale ''to the trustees of some Methodist institution or institutions for the poor or what in his judgment is worthy of the same, * * *.''

The appraisal of the testator's estate, which is a part of the record, shows that his real estate constituted the larger portion of it. His money and a bond were the next items in value. These are likewise given to the said trustees for the same purpose.

The second object of his testamentary solicitude was his sister in law, Miss Bettie Hinton. By the sixth clause he gives to her outright all of his household property in his home in Bridgewater. By the seventh clause he gives to her all of his real estate ''to use, provided that she does not give, will or allow to be inherited by any her relatives, or mine, or individual or individuals.'' Thus by these two clauses he satisfies his desire to make some provision for his sister in law, but he attaches to her right to use his real estate the condition that none of her relatives, or his, shall enjoy any of his bounty in any way, nor shall any individual or individuals. We perceive from this that he had no interest in any of her relatives or his own, and the prohibition of any individual or individuals suggests again the Methodist Church and its welfare as his chief concern. Save the cemeteries, which are subjects of other clauses, the Methodist Church is the only corporate entity mentioned in the will. It will be noted that Miss Bettie Hinton was not a blood relative of the testator. She was only the sister of his wife who had departed this life. He seemed to be reaching out, as it were, for someone upon whom he could bestow the favor of being his devisee or

legatee with some degree of reason therefor. He doubtless had in mind the exclusion of those whom he expressly did not wish to have a share in what he had accumulated and was about to leave.

Counsel for Miss Bettie Hinton urgently contend that under clause seven she takes a fee simple title to the real estate and that this is so for several reasons, one being that the significance of the words of the proviso are not consistent with a lesser estate. The question under their reasoning is, how could one "give, will or allow to be inherited" real estate if one did not own it?

In response to this question and in explanation of this well-nigh senseless condition, we may say that it was an awkward and unintelligent way in which an untutored writer of the will expressed an obsession of the testator. The words simply do not make sense. They are not consistent with a fee simple estate when we take into consideration, as we are obliged to do, other important and perfectly understandable terms, which inescapably denote a life estate in Miss Hinton. These terms are found in the employment of the word "use" in the seventh clause, which qualifies the gift to her of his real estate, and in the very core and heart of the eighth clause which directs his executor, after the death of Miss Hinton, to sell such real estate and personal property, if any, and make other and independent disposition of the proceeds of such sale.

We have said in a number of cases that the word "use" does not import any power of disposition of the *corpus*—the *jus disponendi* of the thing used—but its meaning denotes the contrary. This interpretation is expressed in these words: "Indeed only the right to use and enjoy the benefit of the *corpus* is implied by the word 'use'. *In re Moor's Estate,* 163 Mich. 353, 128 N. W. [198], 199." *Hurt* v. *Hurt,* 121 Va. 413, 422, 93 S. E. 672, 674; *Taylor* v. *Taylor,* 176 Va. 413, 11 S. E. (2d) 587; *Bristow* v. *Bristow,* 138 Va. 67, 69, 120 S. E. 859.

The provision referred to in the eighth clause of the will, which we have no right to ignore or delete therefrom, is absolutely in conflict with any rational conception of a fee simple estate in Miss Hinton. Counsel for her, with impressive ingenuity and acumen, seizes upon the words, "if any", and undertakes to give them such import as would bring the clause, and kindred portions of the will, under the influence of the doctrine announced in the case of *May* v. *Joynes*, 20 Gratt. (61 Va.) 692. This contention fails when it is realized that the words "if any" refer only to the personal property and to a limited part of it. There can be no question about this. We are impressed with the argument of counsel for the appellant Roller and others, who says that the words "if any" cannot apply to the household property because that was bequeathed, under clause six, in fee simple to Bettie Hinton, and in clause eight the monies and bonds were given to the executor with the direction that they were to be given to the trustees of some Methodist institution, etc. So that the application of the said words or phrase could only have been to the livestock, shown in the appraisal.

Again the doctrine of *May* v. *Joynes, supra,* applies to a life estate, expresed in some fashion, with complete power of disposition over the fee, in the life tenant. Here these necessary incidents are wholly lacking.

We come now to consideration of the position of the appellants, Roller and others, that the testator's bequest to the trustees of the church through his executor is void because its object and its mode of effectuation is too uncertain and indefinite to be enforceable and that there is presented a patent ambiguity which cannot be explained by parol testimony in order to arrive at the intention of the testator. A number of cases which have been decided by this court are cited which hold that such general expressions as "to the poor", "for the benefit of the poor", or "for the relief of the poor", and other like general expressions, are too indefinite

and uncertain to be enforceable. But this case is not of that sort. The gift is not to the poor but to some Methodist institution or institutions for the poor or what in the judgment of the executor is worthy of the same. The taker of the gift and the application of its benefits is perfectly plain. But if there is any doubt about any particular Methodist institution satisfying the intention of the testator, in the opinion of his executor, then he is authorized to employ his own judgment as to what prospective recipient is worthy. We use no legerdemain about this. They are just plain and reasonable deductions.

We agree with counsel that the testimony of the scrivener is not admissible, but the validity of the will does not depend upon such testimony. When the will is read together as a whole, which must be done, we perceive no ambiguity of any sort. The testator's intention is manifest and must be controlling.

There was a time in the life of this State when charitable bequests were not valid. But this inhibition, like many others, has gone with the march of time. Remedial and curative statutes found in the Code in sections 38, 587, 588, 590 and 6298a, have given life to such bequests. The attainment of this desired end was in the power of the legislature and it has exercised it. An interesting and elaborate history of this legislation is to be found in two Virginia cases, the opinions in both of them having been written by Hudgins, J. They are *Fitzgerald* v. *Doggett's Ex'r*, 155 Va. 112, 113, 155 S. E. 129, and *Moore* v. *Perkins*, 169 Va. 175, 192 S. E. 806.

The case of *Moore* v. *Downham*, 166 Va. 77, 184 S. E. 199, is a comparatively recent expression of this court, through Campbell, Chief Justice, upholding charitable trusts made under circumstances very similar to those under consideration, in which it is said: "When we consider and construe the related sections of the Code together, as we must do under elementary prin-

ciples, we find authority for the court to supervise and enforce any and all trusts. When the provisions of section 6298a are considered, they lend weight to the view that the General Assembly intended by that act to broaden the scope of charitable trusts and prevent their failure even though they are general and indefinite.''

█ It is contended that the Methodist Church in the Baltimore Conference jurisdiction has no institution for the poor which responds to the provisions of the will we are considering. This, we think, is strained and inaccurate. The organization selected by the executor in this case in its perspective and scope is a sufficient denial of the contention. An examination of its charter provisions brings us to the conclusion that its charter powers enable it to be legally the recipient of the testator's favor.

The decree of the chancellor is affirmed.

*Affirmed.*