# Richmond

## D. Carlton Owens, et al. v. The Bank of Glade Spring, Executor, Etc., et al.

May 3, 1954.

Record No. 4191.

Present, All the Justices.

The opinion states the case.

*Stant & Roberts, Widener & Widener* and *John C. Summers, Jr.*, for the appellants.

*George B. Kreger, Thomas C. Phillips, Boucher & Boucher, R. W. Bell, Fred C. Parks, Roby C. Thompson* and *E. W. Potts*, for the appellees.

SPRATLEY, J., delivered the opinion of the court.

H. D. Owens, a lifelong resident of Glade Spring, Virginia, died testate on January 7, 1951. He was unmarried, and left surviving him no relatives of closer kinship than aunts and cousins. His will, written wholly in his own handwriting, reads as follows:

"I, H. D. Owens, make this my last will and testament being the second day of Nov. 1946.

"I want all my debts paid. The Bank of Glade Spring to be Administrator. The Post Office building I leave to Elizabeth Coleman, her assuming and paying the $4,000.00 note due to Mr. Coleman. The House back of Post Office building and now my home and office I leave to the Town of Glade Spring.

"To John Neal the house now occupied by Ellis Higgins. My old home place now occupied by Roy Coleman I leave

to Parent Teachers Association and Home and Garden Club. To the Glade Spring Baptist Church the Horne building and property purchased from W. H. Wright, this to be held in trust and rentals used. My office equipment along with my car to John Neal.

"Mr. Decker owes me $3,000.00. I want him to pay this to John Neal at the rate of $20.00 per month until the principal is used up, no interest to be charged.

"Any stocks not carried in my name but carried as a joint account with Mr. Decker is to go to Mr. Decker. The balance of my estate bonds, notes and real estate to go to The Glade Spring Baptist Church and Parent-Teachers Association share equally. The Parent-Teachers amount to go to building a recreation home on vacant lot adjoining my old home place. The Baptist Church share to be placed in a trust fund and only the interest used.

"Signed this the 2 day of November, 1946.

/s/ H. D. Owens."

The will was duly admitted to probate, and The Bank of Glade Spring, nominated as executor therein, qualified as such. The estate was appraised at a total value of $93,400.61, which consisted of personal property in the sum of $48,650.61, and real property, including a number of lots of land and a tract of 196 acres, valued at $44,750.

Some questions arising as to the construction of the will and the validity of its provisions, the Bank of Glade Spring instituted this proceeding against the beneficiaries named therein, the heirs at law of the testator, and all other interested parties, praying for a construction of the terms of his will and the direction of the court in the administration of the estate. The beneficiaries filed separate answers and the heirs at law of the testator filed answers and cross-bills. In addition, Melvin Goff filed his answer and cross-bill praying for the specific performance of a contract for the conveyance to him of certain real estate of the testator.

The evidence of a number of witnesses was taken by

depositions. Upon a consideration of the will, the evidence, the briefs and argument of counsel, the trial court rendered a written opinion covering the controlling issues involved. In accordance therewith a decree was entered, in which the court held: (1) That the devise of the undivided one-half interest in "my old home place" to the Home and Garden Club was invalid because the Home and Garden Club did not qualify as a charitable organization and the gift was not for charitable purposes, and directed that the void devise fall into the residuary estate and pass under the residuary clause of the will; (2) that the devise of the "Horne building and property purchased from W. H. Wright" to the Glade Spring Baptist Church was invalid, because the gift was of real estate and the purpose of its use did not come within the provisions of § 57-7, Code of Virginia, 1950, and that this property fell into the residuary estate also; (3) that each of the remaining gifts was valid; (4) that Melvin Goff was entitled to the specific performance of the contract claimed by him; (5) that the residuary estate of the testator, including the property described in the devises declared void should go to the two named residuary beneficiaries, share and share alike; (6) that the land to which the Church was entitled should be sold and the cash proceeds therefrom, after the payment of costs and expenses, paid to the Trustees of the said Church, "to be by them held in trust and only the interest used;" and (7) that the heirs at law of H. D. Owens take nothing, and their cross-bills be dismissed.

In their assignments of error, appellants, heirs at law of the testator, contend: (1) That the devise to the Town of Glade Spring is invalid because the Town is not empowered to take and hold real property not specifically devised for municipal purposes; (2) that the devise of land to the Church in the residuary clause is invalid because it is in excess of the amount which a church can take and hold, and is not said to be for any use or purpose for which a church or its trustees may take and hold real estate; (3) that the

court erred in holding that the devises declared invalid fell into the residuary clause; (4) that the court erred in directing sale of the real property included in the devise to the Church; (5) that the gifts to the "Parent-Teachers Association" are invalid because they are to an indefinite beneficiary, not a charitable organization; and furthermore (6) that none of the gifts is for charitable purposes. They claim that the property described in the devises declared void and that embraced in the residuary clause pass to them as testator's heirs.

The residuary beneficiaries insist that the will is valid and effective as determined by the trial court. The Home and Garden Club does not assign error.

The evidence showed that H. D. Owens was a well educated man, and that with the exercise of business acumen he had accumulated a considerable estate. He was public spirited and civic minded, interested in the religious, civic and educational activities in his community. He was a member of the Glade Spring Baptist Church, and had served on its Board of Deacons, its board of Trustees, and as its Sunday School Superintendent over a long period. He was, and had been for many years, a member of the Council and Treasurer of the Town of Glade Spring. He aided and assisted a number of the young boys of his community in obtaining an education, two of whom, John Neal and Melvin Goff, are parties to this proceeding. He gave considerable of his time and attention to the development and activities of the schools and churches in his town and the surrounding area. He contributed to the Glade Spring Parent-Teacher Association, and showed an active interest in its work and objects.

There is nothing in the evidence to indicate that he had any close affection or friendship for any of his relatives. No one of them is mentioned in his will.

■ The principal and controlling issue, as we see it, is whether the provisions of the residuary clause are valid. If that clause is valid, it effectively disposes of the entire estate,

even though some of the prior devises are incapable of taking effect, since there is nothing in the will to indicate a contrary intention. Section 64-65, Code of Virginia, 1950. In that event, the appellant heirs at law take nothing and have no interest in the estate of the testator.

It is well settled that where a testator uses a general residuary clause in his will the courts are inclined against adopting any construction which leaves him intestate, unless that result is inescapable. *Arnold* v. *Groobey*, 195 Va. 214, 224, 77 S. E. (2d) 382. The law does not favor intestacy.

"In the construction of wills the object is not to seek flaws and declare them invalid, but to sustain them if legally possible, and the presumption is that the testator intended a lawful rather than an unlawful thing. Therefore, where the language used in the will is reasonably susceptible of two different constructions, one of which will defeat, and the other sustain the provisions, the doubt is to be resolved in favor of the construction which will give effect to the will, rather than the one which will defeat it." *Domestic and Foreign Missionary Society* v. *Hospital*, 163 Va. 114, 133, 176 S. E. 193; *Triplett* v. *Trotter*, 169 Va. 440, 445, 193 S. E. 514; *Moon* v. *Norvell*, 184 Va. 842, 850, 36 S. E. (2d) 632.

Here it is clearly manifest that the testator undertook to dispose of his entire estate. The word "balance," as employed by the testator, imports the meaning of "residue." It means all that which is left or remains after prior effectual disposal, and includes as well that which from any cause lapses or is void. Code, § 64-65; *Prison Association* v. *Russell*, 103 Va. 563, 49 S. E. 966. It "operates as a residuary clause." *Lynch* v. *Spicer*, 53 W. Va. 426, 44 S. E. 255.

See also 20 M. J., Wills, § 110, page 300; *Arvin* v. *Smith's Ex'rs.*, 142 Va. 680, 686, 128 S. E. 252.

The next questions for consideration are whether the testator intended to make the Glade Spring Parent-Teacher

Association his beneficiary; and, if so, whether the gifts to it were for charitable purposes.

The subject of charitable trusts has been before this court on many occasions, and in the cases hereinafter cited will be found the history of the law relating to such trusts in Virginia. *Collins* v. *Lyon*, 181 Va. 230, 24 S. E. (2d) 572; *Allaun* v. *First etc. Bank*, 190 Va. 104, 56 S. E. (2d) 83; *Shenandoah National Bank* v. *Taylor*, 192 Va. 135, 63 S. E. (2d) 786; *Maguire* v. *Loyd*, 193 Va. 138, 67 S. E. (2d) 885. See also *Moore* v. *Perkins*, 169 Va. 175, 192 S. E. 806.

In *Shenandoah National Bank* v. *Taylor, supra*, at page 140, we quoted with approval the following comprehensive classification of charitable purposes from Restatement of the Law of Trusts, sec. 368, page 1140, as including:

"(a)   the relief of poverty;
"(b)   the advancement of education;
"(c)   the advancement of religion;
"(d)   the promotion of health;
"(e)   governmental or municipal purposes; and
"(f)   other purposes the accomplishment of which is beneficial to the community."

In *Allaun* v. *First etc. Bank, supra*, we quoted the definition of what a charity is from 3 M. J., Charitable Trusts, § 2, page 872, which included the following statement:

" 'Generally speaking, any gift not inconsistent with existing laws which is promotive of science or tends to the education, enlightening, benefit or amelioration of the condition of mankind or the diffusion of useful knowledge, or is for the public convenience is a charity. It is essential that a charity be for the benefit of an indefinite number of persons; for if all the beneficiaries are personally designated, the trust lacks the essential element of indefiniteness, which is one characteristic of a legal charity.' " (190 Va. at 108).

See also *Protestant Episcopal Education Soc.* v. *Church-*

*man,* 80 Va. 718; and *Thomas* v. *Bryant,* 185 Va. 845, 40 S. E. (2d) 487; 169 A. L. R. 257.

In *Collins* v. *Lyon, supra,* at page 247, this is said:

"The word 'charity' as used in law has a broader meaning and includes substantially any scheme or effort to better the condition of society or any considerable part thereof. It has been well said that any gift not inconsistent with existing laws, which is promotive of science or tends to the education, enlightenment, benefit or amelioration of the condition of mankind or the diffusion of useful knowledge, or is for the public convenience, is a charity."

The evidence shows that the Glade Spring Parent-Teacher Association is the only organization of that nature which operated in Glade Spring and the surrounding community. It is a voluntary unincorporated association, the larger number of whose members reside in the vicinity of Glade Spring. It is a local unit of the Virginia branch of the National Congress of Parent-Teacher Associations, and is affiliated with a State organization, incorporated under the name of "The Cooperative Education Association of Virginia," with its principal office in Richmond, Virginia. The correct name of the unit in Glade Spring as set forth in its by laws, is "Glade Spring Parent-Teacher Association." In its by-laws, Article II, the objects are stated as follows:

"To promote the welfare of children and youth in the home, school, church, and commuinty.

"To raise the standards of home life.

"To secure adequate laws for the care and protection of children and youth.

"To bring into closer relation the home and the school, that parents and teachers may cooperate intelligently in the training of the child.

"To develop between educators and the general public such united efforts as will secure for every child the highest advantages in physical, mental, social, and spiritual education."

It then provides in Section 1 of Article III, dealing with its policies, the following:

"The purpose of this association shall be educational and shall be developed through conferences, committees, and projects."

Its prime aims and objects are, therefore, the advancement of education, the promotion of health, and social relations, and the betterment of mankind. In the pursuance of these objects, it practices charity for the benefit of all the people of the community in which it operates, and thus promotes purposes the accomplishment of which is beneficial to the community.

It will be noted that the testator first gave the "Parent-Teachers Association" a one-half undivided interest in his "old home place," and then in the residuary clause provided that his gifts to that Association are "to go to building a recreation home on vacant lot adjoining my old home place." According to the evidence, testator's "old home place" adjoins the school property. There can be little doubt that a recreation home under the control of the Parent-Teacher Association of Glade Spring on land adjoining the grounds of the Glade Spring high school is most suitable for the advancement of education and the promotion of health. Even if the words "Glade Spring" as used in the clause "to go to The Glade Spring Baptist Church and Parent-Teachers Association share equally" do not refer to the Association as well as to the Church, the circumstances surrounding the testator show that the Glade Spring Parent-Teacher Association was the only organization of that nature which he had in mind.

Code, §§ 55-26 and 55-31 are applicable in this case. The pertinent portion of § 55-26 reads:

" * * * and every gift, grant, devise or bequest made hereafter for charitable purposes, whether made in any case to a body corporate or unincorporated, or to a natural person, shall be as valid as if made to or for the benefit of a certain natural person, * * * ."

The pertinent portion of § 55-31 reads:

"When any * * * person gives, bequeaths, grants, conveys or devises any real or personal property in trust to or for any educational, charitable or eleemosynary purpose, * * * the indefiniteness of the purpose of the trust itself, shall not defeat any such trust and, if the trust is in other respects valid under the laws of this State, it shall be administered to conform as near as may be to the purpose for which created, or, * * *."

We conclude that the description in the will taken in connection with the facts stated fully identify the Glade Spring Parent-Teacher Association as the intended beneficiary; that the gift to it was for charitable purposes; and that it is entitled to receive the benefit of testator's favor in the pursuance of its charitable objects.

Having reached the conclusion that the testator intended to dispose of his entire estate by will, we come to the contention that the Baptist Church is not entitled to take under the residuary clause because the will does not show the use and purpose of the gift, and the amount of the real estate given to it is in excess of the acreage it may lawfully hold.

Section 57-7 providing what transfers for religious purposes shall be valid takes care of the situation when the object and purpose of a gift to a religious congregation are indefinite or uncertain. It reads, in part, as follows:

"* * * And no gift, grant, or bequest hereafter made to such church or religious congregation, or the trustees thereof, shall fail or be declared void for insufficient designation of the beneficiaries in, or the objects of, any trust annexed to such gift, grant, or bequest * * *, provided that whenever the objects of any such trust shall be undefined, or so uncertain as not to admit of specific enforcement by the chancery courts of the Commonwealth, then such gift, grant, or bequest shall enure and pass to the trustees of the beneficiary congregation, to be by them held, managed, and the principal or income appropriated for the religious and benevolent uses

of the congregation as such trustees may determine, \* \* \*."

See *Fitzgerald* v. *Doggett's Ex'r.*, 155 Va. 112, 155 S. E. 129; *Maguire* v. *Loyd, supra.*

█ It will be noted that in the specific devise of the Horne and Wright properties to the Church, the testator provided that they were "to be held in trust and rentals used." The residuary clause in the last sentence of the will provides that "The Baptist Church share to be placed in a trust fund and only the interest used." Thus he evidenced an appreciation of the difference between the status of real estate "to be held in trust and rentals used" and that of real and personal property "to be placed in a trust fund and only the interest used."

In general, the word "fund" means a sum of money. "Interest," as used here, means a price paid for the use of money. The interest of the Church in the land could not be placed in a "trust fund" and interest realized therefrom unless the real property should be converted into cash and the cash invested. The sentence clearly shows that it was the intention of the testator that the share of the Church should be used to constitute a trust fund, and "only the interest" therefrom applied to the use of the Church.

In *Thomas* v. *Bryant, supra,* 185 Va. page 852, this is said:

" 'Charitable gifts are viewed with peculiar favor by the courts, and every presumption consistent with the language contained in the instruments of gift will be employed in order to sustain them.' All doubts will be resolved in their favor."

The intention of the testator, if it may be ascertained from a reading of his will as a whole, controls, and it is our duty to uphold the will if it can be done without violating any fixed rule of law. *Roller* v. *Shaver*, 178 Va. 467, 472, 17 S. E. (2d) 419; *Triplett* v. *Trotter, supra;* 20 M. J., Wills, § 77, *et seq.*, and numerous cases cited.

In *Roller* v. *Shaver, supra,* 178 Va. at page 476, this is said:

"There was a time in the life of this State when charitable bequests were not valid. But this inhibition, like many others, has gone with the march of time. Remedial and curative statutes, found in the Code in Sections 38, 587, 588, 590 and 6298a, (now Virginia Code, 1950, sections 57-7, 55-26, 55-27, 55-29 and 26-54) have given life to such bequests. The attainment of this desired end was in the power of the legislature and it has exercised it."

Appellants complain that the trial court erred in ordering sale of the real estate passing to the Church under the residuary clause by applying the doctrine of equitable conversion.

It is clear to us that the testator did not intend that his heirs at law receive any portion of his estate. He desired one-half of his property passing under the residuary clause to be used for religious purposes, and the remaining half for charitable purposes. In directing that the share of the Church "be placed in a trust fund and only the interest used," he necessarily directed that so much of that share as consisted of real estate be converted into cash to constitute a part of the "trust fund." In our view, the language used by him is sufficient to allow the accomplishment of his purpose without resorting to the doctrine of equitable conversion.

However, by applying the doctrine of equitable conversion, it is plain that the intention of the testator can be carried out without violating the statutes relating to the holding of real estate by a church. Here the personal property, based on the appraised value, falling into the residuary estate amounted to approximately $25,000. The value of the real property, based on its appraisal, falling into that estate amounted to approximately $21,000. The share of the Church, under the will, could be discharged from the part it could take without objection, that is, from the personal property, and there would be sufficient real and personal property left to satisfy the other residuary beneficiary. Section 57-7 places no limitation upon gifts, grants, and

bequests of personal property to churches, except as provided in Code, § 57-12.

In *St. Stephen's Church* v. *Norris*, 115 Va. 225, 78 S. E. 622, the testator gave all of his estate to St. Stephen's Church. He directed the Church to devote one-half of his property to the erection of an iron fence around the churchyard in memory of his sister, and $600 to the purchase of tombstones for himself and certain members of his family. The heirs at law of the testator attacked the validity of that part of the will which disposed of the real estate on the ground that the Church was prohibited from taking and holding real estate by § 1398 of the Code of 1904 (now § 57-7, Code of 1950, as amended). Holding that the disposition of the estate necessarily involved an equitable conversion of the real estate left into money, for otherwise the purposes of the testator could not be effectuated, the court said:

"Much the greater portion of the estate left was personal property, and a court of equity, in furtherance of the purposes of the testator, would discharge the interest of the Church, under the will, from that portion of the estate which it could take without objection, and devote the real estate, or its proceeds, to building the memorial and buying the tombstones, * * *."

Continuing the court said: "Every sane man must be allowed to make his own will, provided he violates no law or public policy in disposing of his estate. It is not the policy of the law to seek grounds for avoiding devises and bequests, but rather to deal with both so as to uphold and enforce them if it can be done consistently with the rules of law."

In *Clay* v. *Landreth*, 187 Va. 169, 174, 45 S. E. (2d) 875, we approved the following statement:

" 'The doctrine of equitable conversion is altogether a doctrine of equity and depends wholly upon the rules of equity. Its real purpose is to give effect to the manifest

intent of a testator or vendor and to treat that as done which by will the testator has directed to be done * * *.' "

The trial court properly held that the devises declared invalid fell into the residuary clause. Section 64-65, Code of Virginia, 1950, provides that:

"Unless a contrary intention shall appear by the will, such real estate or interest therein as shall be comprised in any devise in such will, which shall fail or be void or otherwise incapable of taking effect, shall be included in the residuary devise, if any, contained in such will."

Here the testator used a general residuary clause, effective in all respects, to dispose of all of his property. There is nothing in his will to indicate a contrary intention. The gifts to the beneficiaries named in the residuary clause being valid, they not only take that which was not otherwise effectually disposed of by the will, but also that which the will attempted ineffectually to dispose of, and which from any cause failed or became void. *Gallagher & etc.* v. *Rowan's Adm'r., et als.,* 86 Va. 823, 825, 11 S. E. 121; *Prison Association* v. *Russell, supra,* 103 Va. at page 568; and *Kent* v. *Kent,* 106 Va. 199, 202, 203, 55 S. E. 564.

"A general residuary clause contained in a will carries with it any legacies which for any reason have lapsed, or are void, or have for any other reason failed, unless it appears from the will that it was the intention of the testator that under such circumstances the next of kin should take as in case of intestacy, or unless the residuary clause is itself void." 69 Corpus Jur., Wills, Sec. 2310, page 1072.

"* * * in most jurisdictions the general principle that a lapsed or ineffectual gift passes under the residuary clause in the absence of contrary context is regarded as applicable even in the situation where the donee is also named as a residuary beneficiary." 57 Am. Jur., Wills, Sec. 1456, page 978.

Appellants not being devisees under the will have no interest in the estate which passed under the will. For that

reason, we do not think that they have any right to a decision of any question other than those herein considered and determined.

For the foregoing reasons, the decree of the trial court is affirmed.

*Affirmed.*