## CIRCUIT COURT OF THE CITY OF ROANOKE

Barbara M. Kesler
and Betty Powell

v.

Earl D. Dillon, Executor
of the Estate of Livia A. Moses,
Charles R. Moses,
Zion Lutheran Church,
Zion Lutheran Cemetery,
Mildred B. Turner,
and Helen Richards

July 12, 1989

Case No. CH88000769

By JUDGE ROY B. WILLETT

Zion Lutheran Cemetery is located on real estate owned by the Zion Lutheran Church in the Courthouse Magisterial District of Floyd County, Virginia, and has been in existence since the early nineteenth century. By order of the Circuit Court of Floyd County, Virginia, entered on January 15, 1934, of record in Common Law Order Book No. 10 at page 44, the trustees of the Zion Lutheran Church were given the authority to convey burial lots in the cemetery to whoever may desire to purchase them; a copy of the Order is filed herein. Burial lots have been conveyed to members of the church and to non-members over the years. Many of Livia A. Moses's relatives are buried in the cemetery. Livia A. Moses had made contributions to the church

and the cemetery during her lifetime. Livia A. Moses departed this life testate on May 6, 1987, a resident of the City of Roanoke, Virginia, and by the terms of her Last Will and Testament, she bequeathed all of her estate at the time of her death, except for some relatively small, individual bequests, to Zion Lutheran Church, Floyd, Virginia, and Zion Lutheran Cemetery in equal shares, with a provision that if Zion Lutheran Church (hereinafter, "Church") built in a location other than its present site, then the share of the Zion Lutheran Church would go to the Zion Lutheran Cemetery (hereinafter, "Cemetery"). The will was drafted by a layman, and not by an attorney. Earl D. Dillon, one of the Defendants and the named Executor in the Will, was the layman who drafted the will using a form he had in his possession. Livia A. Moses told him how she wanted to dispose of her property. He followed her wishes in drafting the Will.

Under the Will, the shares of the Church and the Cemetery would each exceed $30,000.00. These facts are not in dispute. The issue of the validity of the subject Will was tried to a jury, and a final Decree, based upon the jury verdict, adjudged the will in question to be the valid last will of the Deceased, Livia A. Moses.

The Parties to this Cause have submitted the issues herein to this Court for a decision based upon the Stipulation of Facts filed on April 14, 1989, and the Memoranda duly filed by the parties, along with argument by Counsel for the Parties.

I: *The first issue to be decided by the Court is whether the $30,000 limitation on a bequest to a cemetery set out in Virginia Code Section 57-33 applies to the subject bequest to Zion Lutheran Cemetery.*

The statutory provisions limiting general bequests to cemeteries seem to be straightforward. Section 57-33 of the *Code of Virginia*, provides the following language:

> No gift, grant, devise or bequest from any one person for any and all of the purposes named in this article shall exceed $30,000 in value or amount, and any such gift, grant, devise or bequest heretofore made not in excess

of $30,000 shall be valid; nor shall the aggregate amount and value of all gifts, grants, devises and bequests which may be held for the improvement, repair or embellishment of any single lot in any cemetery or burial ground, including the monuments, tombs and vaults therein, exceed $10,000 at any one time. All gifts, grants, devises and bequests for such purposes in excess of the amount herein named shall be void.

Virginia Code Section 57-35.1 defines "cemetery" as follows:

any land or structure used or intended to be used for the interment of human remains. The sprinkling of ashes, or their burial in a biodegradable container on church grounds or their placement in a columbarium on church property shall not constitute the creation of a cemetery.

Section 57-34 provides the only exception which the Court can find to the above limitation relating to a bequest to a cemetery; Section 57-34 is as follows:

Nothing contained in this article shall be construed as limiting the amount which may be given, bequeathed or devised to defray the original cost of the cemetery, burial lot, monument, vault or other like erection or structure, nor shall this article be construed as affecting any estate that has been distributed or settled on the basis of the law then existing.

Both Sections 57-33 and 57-34 have been in existence, in their present, basic form for many years.

The Cemetery was in existence for some time before the Last Will and Testament of Livia A. Moses was written and executed. I conclude that the cemetery is entitled to only $30,000.

The Defendants argue that the $30,000 cap established by Section 57-33 is without effect in the Cause before this Court. The Defendants set forth several theories. First, they argue that Virginia Code Section 57-33 limits only those amounts "for any and all purposes named in

the article . . . [Article 3 of Chapter 3, Title 57, of the *Code of Virginia*]." *See* Defendants', Zion Lutheran Church and Zion Lutheran Cemetery, Reply Brief 2-3. The Defendants argue that the Legislature intended to save bequests left in trust for the maintenance of a cemetery from violating the Rule Against Perpetuities. Since it is possible for a cemetery to spend such a bequest immediately and not hold it in trust in perpetuity for maintenance, the Defendants conclude that Virginia Code Section 57-33 does not apply in this Cause. The word "trust" does not appear in Section 57-33. The simpler reading of the plain language of Section 57-33 leads one to the conclusion that the provision applies to any bequest, regardless of whether the bequest is to be held in trust. The Defendants, Church and Cemetery, trace Article 3 of Chapter 3, Title 57 of the *Code of Virginia* (1950), as amended, to its origin in the 1904 General Assembly. In 1904, the General Assembly enacted legislation entitled "an Act to make valid any disposition of property in perpetuity for the maintenance or care of cemeteries, cemetery lots, monuments, and other erections, and authorizing cemetery companies or trustees holding title to cemeteries or burial grounds to take and hold any property according to the terms of the grant, bequest, devise or gift." While the original 1904 legislation did intend to save bequests made in trust for perpetuity from the Rule Against Perpetuities, a better reading of the aforementioned Act of 1904, upon which the Defendants rely, provides an independence of Section 1, relating to perpetuity defects, from Section 2, which limited bequests to cemeteries. Exhibit C of the Reply Brief of Defendants Zion Lutheran Church and Zion Lutheran Cemetery. Further, this reading of the legislation from which Section 57-33 is derived, is consistent with the plain language of Section 57-33. The $30,000 limit effected by Section 57-33 of the Code of Virginia applies to the Zion Lutheran Cemetery, whether or not the bequest was paid into trust or somehow envisioned to be immediately expended.

I must consider the second, primary basis of the Defendants' argument against the application of the $30,000 cemetery-bequest ceiling found in Section 57-33. Simply put, the Defendants argue that charitable trusts are not subject to *any* limitation, and the Virginia Code Section

55-26.1 is controlling, rather than the specific Section 57-33. Even if the bequest to the Cemetery were a charitable trust, proper statutory construction requires more specific legislative directives to prevail over general ones. Section 57-33 provides a very specific statutory limitation; the amount of a bequest to a particular type of entity (cemetery) is specifically limited by Section 57-33. The purpose of Virginia Code Section 55-26.1 was to give life to charitable bequests that had been formerly held invalid. *Owens v. Bank of Glade Spring*, 195 Va. 1138 (1954), the $30,000-bequest cap set forth in Section 57-33 is operative in the Cause before the Court and applies to the bequest to Zion Lutheran Cemetery. The Testatrix did not express in her will an intention that her bequest to the Cemetery was to be in trust; she did not state a trust purpose, and she did not advise as to the method of administration of the donated funds.

II: *If the Thirty-Thousand-Dollars ceiling applies to the bequest to the Zion Lutheran Cemetery, what is the effect upon the excess?*

The excess of the bequest to the Cemetery and its disposition is controlled by Virginia Code § 57-7. Section 57-7 deals with transfers for religious purposes:

> Every conveyance, devise, or dedication shall be valid which, since the first day of January, 1777, has been made, and every conveyance shall be valid which hereafter shall be made of land for the use or benefit of any religious congregation as a place for public worship, or as a burial place, or a residence for a minister, or for the use or benefit of any church diocese, church, or religious society, as a residence for a bishop or other minister or clergyman who, though not in special charge of a congregation, is yet an officer of such church diocese, church or religious society, and employed under its authority and about its business; and every conveyance shall be valid which may hereafter be made, or has heretofore been made, of land as a location for a parish house or house for

the meeting of societies or committees of the church or others for the transaction of business connected with the church or of land as a place of residence for the sexton of a church, provided such land lies adjacent to or near by the lot or land on which is situated the church to which it is designed to be appurtenant; or for use in furtherance of the affairs of any church diocese, and the land shall be held for such uses or benefit and for such purposes, and not otherwise. And no gift, grant, or bequest hereafter made to such church diocese, church or religious congregation, or the trustees thereof, shall fail or be declared void for insufficient designation of the beneficiaries in, or the objects of, any trust annexed to such gift, grant, or bequest in any case where lawful trustees of such church diocese, church or congregation are in existence, or the church diocese, or the congregation is capable of securing the appointment of such trustees upon application as prescribed in § 57-8; but such gift, grant, or bequest shall be valid, subject to the limitation of § 57-12; provided, that whenever the objects of any such trust shall be undefined or so uncertain as not to admit of specific enforcement by the chancery courts of the Commonwealth, then such gift, grant, or bequest shall inure and pass to the trustees of the beneficiary church diocese or congregation, to be by them held, managed, and the principal or income appropriated for the religious and benevolent uses of the church diocese or congregation, as such trustees may determine, by and with the approval of the vestry, board of deacons, board of stewards, or other authorities which, under the rules or usages of such church diocese, church or congregation, have charge of the administration of the temporalities thereof.

Provided that any devise of property after January 1, 1953, for the use or benefit of any religious congregation, wherein no specific use or purpose is specified shall be valid.

(Code 1919, § 38; 1954, c. 268; 1956, c. 611; 1962, c. 516.)

This Section relates to bequests of personalty, as well as real estate. *Maguire v. Loyd*, 193 Va. 138 (1951). In the event that the object of a religious bequest is "undefined" or "so uncertain" as to prevent specific performance, the Statute calls for the bequest to inure to the related church's trustees. Virginia Code § 57-7. The excess funds disposition has become uncertain in the case at bar. Specific performance is not possible, but Section 57-7 applies to the present situation and the excess cemetery funds will pass to the Church. There are two residual beneficiaries, the Church and the Cemetery; they are virtually one entity. The Church established the Cemetery; the trustees of the Cemetery were appointed by the Floyd County Circuit Court during the course of these and the earlier, related proceedings. In effect, separate bequests to the Church and the Cemetery represent different *purposes*, rather than truly different recipient *entities*. Upon the frustration of one purpose to the bequest of the Church, the law of this Commonwealth provides for the Trustees of the Church to receive and apply the bequest for general, religious, and benevolent purposes. *Owens v. Bank of Glade Spring*, 195 Va. 1138 (1954). Again, in the event that the object of a religious bequest is "undefined" or "so uncertain" as to prevent specific performance, Section 57-7 provides for the bequest to inure to the related church's trustees activities and benefits.

I must consider the sub-issue raised relating to a charitable trust. Even if the bequest in question constitutes a charitable trust, the Church would still receive the excess of the residuary bequest to the Cemetery (in excess of $30,000) by application of the Doctrine of *Cy Pres. See* Virginia Code § 55-31. Upon the finding of a valid charitable trust and a general charitable intent, the Doctrine of *Cy Pres* may be invoked upon the additional finding that the purpose of the trust is impossible to fully perform. *Smith v. Moore*, 225 F. Supp. 434, 441 (E.D. Va. 1963). In the case before the Court, the statutory ceiling makes a portion of Livia A. Moses' bequest to the Cemetery impossible to perform. The *cy pres* doctrine directs this Court to determine the purpose of the bequest

and then administer the funds in a manner conforming as closely as possible to the testator's purposes. Virginia Code § 55-31.

Further, considering the *Cy Pres* Doctrine, I call your attention to *Harrison on Wills and Administration*, 3rd Edition, Section 302, at page 143, dealing with Virginia and West Virginia:

> Generally, the *cy pres* doctrine involves the theory that where a general charitable intent is expressed on the part of the donor, and either no particular object is mentioned or the original object fails completely or does not exhaust the fund, the court will apply the funds to those charitable objects as seem most nearly in accord with the donor's intent. The doctrine of *cy pres* is an equitable remedy employed when the terms of a charitable trust become illegal, impossible, or impractical to fulfill. Under this doctrine, a court may direct the trust funds be expended in a charitable manner *cy pres* (as near) to the donor's intent as possible . . .

This Doctrine is codified in Virginia Code Section 55-31.

The obvious intent found in Livia A. Moses's will is to aid the Zion Lutheran Church and to assist it in maintaining the Zion Lutheran Cemetery. Miss Moses wished to provide one-half of her residual estate for the general purposes of the church and one-half for the use of the cemetery. Ms. Moses wished to have the Church and Cemetery remain in their respective, adjacent locations and to have them operate concurrently. Upon the impossibility of directing all of the one-half share to the Cemetery, the overriding purpose of aid to the Church can best be honored by directing the excess to Zion Lutheran Church. Again, *see* Virginia Code Section 55-31. Looking again to *Owens, supra*:

> When any . . . person gives, bequeaths, grants, conveys or devises any real or personal property in trust to or for any educational, charitable,

or eleemosynary purpose . . . the indefiniteness of the purpose of the trust itself shall not defeat any such trust, and if the trust is in other respects valid under the laws of this State, it shall be administered to conform as near as may be to the purpose for which created . . .

Virginia Code Section 64.1-65.1(b) directs that where funds are devised or bequeathed to two or more persons, if the share of one fails for any reason, such share shall pass to the other residuary devisee or legatee in proportion to its interest in the residue. The law disfavors intestacy. Where a testator adopts a general residuary clause in his or her will, the courts are inclined against construction that would leave him or her fully or partially intestate. *Id.*, *Smith*, 225 F. Supp. at 442. In a cause such as this requiring a choice between attempting to give the will effect and allowing funds to revert to intestacy, Virginia favors the former. *Owens*, 195 Va. at 1150. Further, "charitable gifts are viewed with peculiar favor by the courts and every presumption consistent with the language contained in the instrument of gift will be employed in order to sustain them." *Smith*, 225 F. Supp. at 441. The curative and remedial statutes cited in this opinion give life to the testatrix's intended bequests.

This Court can distinguish this cause from *Maguire v. Loyd*, 193 Va. 138 (1951). The Plaintiff's Opening Memorandum, pages 8 through 11, rely primarily upon *Maguire* in their argument. In *Maguire*, a bequest to a church was limited by Virginia Code Section 57-12, and the Court, in that case, directed the excess to the heirs of the testator. The herein Plaintiffs rely upon *Maguire* for the proposition that bequests in excess of the statutory limits are void and revert to the heirs of the decedent. *See* Plaintiffs' Memorandum, 8-11. The Plaintiffs, in their aforesaid Memorandum, make the following statement regarding the case before this Court:

In the instant case, it is expressly clear that the testatrix directed that one-half of her pecuniary estate pass to Zion Lutheran Church. It is submitted that this amount vested

in the church immediately upon testator's death subject to the requirements of the statute regulating religious charities set forth above in Section 57-12 *supra*.

This Court has no quarrel with the above quote in the Memorandum of the Plaintiffs, however, in *Maguire*, there was apparently no other entity or purpose to which that court could direct the excess created by the cited statute. The Plaintiffs draw their conclusion prematurely in the cause at bar.

In the present case, in contrast to the *Maguire* case, Livia A. Moses made bequests to two purposes or entities: the Church and its related Cemetery. Application of the doctrine of *cy pres* results in at least giving proper consideration to whether or not the Testatrix's purpose can be best effected by directing the excess Cemetery bequest to the other purpose entity. *See* Virginia Code Sections 55-31 and 57-7; *Smith* 225 F. Supp. at 439-41. The reasoning in *Maguire* is not valid in the Cause presently before this Court.

"Unless a contrary intention appears by the Will, and except as provided in Section 64.1-64.1, if a devise or bequest other than a residuary devise or bequest fails for any reason, it shall become a part of the residue." *See* Virginia Code Section 64.1-65.1(A).

"Unless a contrary intention appears by the Will and except as provided in Section 64.1-64.1 if the residue is devised or bequeathed to two or more persons and the share of one fails for any reason, such share shall pass to the other residuary devisees or legatees in proportion to their interest in the residue." *See* Virginia Code Section 64.1-65.1(B).

It was the clear intent of the Testatrix to leave all the rest and residue of her estate to the Church and Cemetery. The Testatrix was not aware of the statutory limitation placed upon her bequest to the Cemetery. It is the conclusion and factual finding of this Court that the Testatrix desired and directed the Church and Cemetery to share equally, but she further left no doubt that she desired to have *all* the rest and residue of her estate to go to the Church *and* Cemetery, after certain agreed-upon provisions of her holographic will were carried out.

*Decision:*

Based upon the foregoing findings of fact and conclusions of law reached herein, it is the decision of this Court that the Zion Lutheran Cemetery take the statutory limit of $30,000 from the estate of the Testatrix, Livia A. Moses, and that all the rest, remainder, and residue of Ms. Moses' estate pass to the Zion Lutheran Church, after the other specific bequests are honored, and all debts of the estate are paid.

The undersigned has given this matter a great deal of time and attention, and it is the desire of this Court, in accordance with the law of the Commonwealth of Virginia, to carry out the underlying intent and wishes of the Testatrix herein. This Court does not wish to cause a portion of her estate to revert to intestacy when it is so clear to this Court what the Testatrix's desires and wishes were as evidenced by her Last Will and Testament.